DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Gallia County Common Pleas Court, Juvenile Division, judgment that awarded custody of Taylor Paige Wooten, born January 20, 2002, to the child's natural father, Jason Matthew Casey, defendant below and appellee herein.
 {¶ 2} Whitney Wooten, the child's natural mother, raises the following assignment of error for review:
"The trial court's decision to award custody to the appellee was contrary to law, against the manifest weight of the evidence and an abuse of discretion."
 {¶ 3} On January 20, 2002, appellant and appellee, both high school students, had a child, Taylor Paige Wooten (Taylor). After Taylor's birth, she lived with appellant and appellant's family.
 {¶ 4} On January 13, 2003, appellant was placed in the Gallia County Children's Home due to truancy. She agreed to place Taylor in appellee's care so that Taylor would not go to a foster home. Because appellee spends his weekdays at school and his weeknights at work, his twenty-year old girlfriend, Tiffany Skidmore, agreed to care for the child. Tiffany lives at home with her parents and siblings.
 {¶ 5} On January 28, 2003, appellee filed an ex parte motion and requested the court to designate him "Taylor's temporary and permanent residential parent and legal custodian." On that same date, the court granted appellee "the temporary right to act as residential parent and legal custodian" of the child.
 {¶ 6} On February 13, 2002, appellant requested "an immediate hearing" regarding the trial court's ex parte order. On February 27, 2003, the court held a hearing. At the hearing, the parties advised the court that they had reached an agreement that appellee continue to be the temporary residential parent and legal custodian of the minor child and that appellant would have visitation every other weekend and one day per week.
 {¶ 7} On March 28, 2003, the court held a final hearing on appellee's motion. At the hearing, appellant admitted that she has a history of truancy and has been in juvenile court "a lot." Appellant stated that appellee is a good father and has adequate means to care for the child. She further testified that although she does not currently work, she receives $163 per month for the child and that she still receives the check, even though appellee currently has custody. Appellant explained that she has not forwarded the money to appellee, but instead uses the money to buy diapers, clothes, bottles, bottle liners, and formula for the times when the child visits.
 {¶ 8} Gallia County Children Services caseworker Charlotte McGuire stated that she performed a home study of Tiffany Skidmore's house, the location where Taylor spends a large amount of time. McGuire stated that the child stays at the Skidmore household "a lot." McGuire testified that the Skidmore house is an appropriate place for the child.
 {¶ 9} Tiffany's mother, Kim Skidmore, testified that Tiffany and appellee have been dating for about two years. She explained that because appellee attends school during the day and works at night and on some weekends, the child stays at her house "a lot." She stated that appellee comes to see the child during the hour between school and work. She also explained that they keep the child overnight and that appellee sometimes spends the night.
 {¶ 10} Appellee testified that he attends Buckeye Hills Career Center and is studying Diesel Mechanics. Upon graduation, he intends to become a certified diesel mechanic. Appellee stated that he stays at Tiffany's house three or four times per week.
 {¶ 11} Kim Wooten, appellant's mother, testified that after appellant had the child, appellant did not want to return to school but wanted to stay home and care for the child.
 {¶ 12} On April 28, 2003, the trial court granted custody of Taylor to appellee. The court considered the wishes of the parents and noted that both wish to be the custodial parent. In considering Taylor's interaction and interrelationship with all concerned persons, the court noted that: (1) all family members love Taylor and help with her upbringing; (2) all parties have developed a close relationship with Taylor; and (3) Taylor has adjusted well to the home environments.
 {¶ 13} The trial court stated that it "was impressed with [appellee's] family and ancillary support mechanisms." The court noted that appellee is a full-time student, earns "decent grades," and "appears to have goals and aspirations." The court further observed that appellee works in order to support the child and does not ask for assistance.
 {¶ 14} The court additionally found that appellant loves and desires to care for the child. The court further stated, however, that it was:
"certainly not impressed with the fact that she's 17 and still in the 9th grade. * * * The Court is certainly not impressed that the Juvenile Court system had to get involved to force her to attend school or the fact that she couldn't remember the number of times she had been involved with the Juvenile Court system. The Court also was not happy with her decision to not forward any of the public assistance to the child's father but rather to purchase things and almost hoard them. Her discussions about potential employment were equally unimpressive. She could not remember if and when she began looking for a job and it almost seemed in Court that she though a potential job at the city swimming pool would start immediately. All signs of a very immature and irresponsible young woman."
 {¶ 15} The court found that appellant "wants deeply to become a full-time mother but doesn't take the responsibility of attending school or doing homework." Thus, the court stated: "[A]t present [appellee] is the only parent who is mature and responsible enough to have custody" of the child. Appellant filed a timely notice of appeal.
 {¶ 16} In her sole assignment of error, appellant asserts that the trial court erred by awarding custody of the child to appellee. She argues that the court failed to consider which parent performed the role of primary caregiver. Appellant additionally contends that the court abused its discretion by placing the child in appellee's custody when the evidence revealed that appellee was not primarily caring for the child, but instead, appellee's girlfriend primarily cared for the child.
 {¶ 17} We initially note that when "an award of custody is supported by a substantial amount of credible and competent evidence, such an award will not be reversed as being against the weight of the evidence by a reviewing court." Bechtol v. Bechtol (1990),49 Ohio St.3d 21, 550 N.E.2d 178, syllabus; see, also, Davis v.Flickinger (1997), 77 Ohio St.3d 415, 418, 674 N.E.2d 1159. Furthermore, a reviewing court should afford the utmost deference to a trial court's decision regarding child custody matters. See, e.g., Miller v. Miller
(1988), 37 Ohio St.3d 71, 74, 523 N.E.2d 846. Consequently, absent an abuse of discretion, a reviewing court will not reverse a trial court's decision regarding child custody matters. See, e.g., Bechtol, supra. When applying the abuse of discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. See, e.g.,Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140. Moreover, deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does not translate to the record well." Davis, 77 Ohio St.3d at 419. Thus, reviewing courts should give great deference to trial court child custody decisions. Pater v. Pater
(1992), 63 Ohio St.3d 393, 396, 588 N.E.2d 794.
 {¶ 18} When allocating parental rights and responsibilities, R.C. 3109.04(F)(1) requires trial courts to consider the child's best interests. The statute provides:
(F)(1) In determining the best interest of a child pursuant to this section, whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to:
(a) The wishes of the child's parents regarding the child's care;
(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
(d) The child's adjustment to the child's home, school, and community;
(e) The mental and physical health of all persons involved in the situation;
(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;
(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;
(h) Whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;
(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;
(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.
 {¶ 19} In the case at bar, appellant asserts that the trial court failed to consider that she was Taylor's primary caregiver from birth until January 13, 2003. We note that although the primary caregiver is not a codified factor of 3109.04(F), courts have held that trial courts may consider which parent is a child's primary caregiver when courts consider the child's best interests. See, e.g., Thompson v. Thompson
(1987), 31 Ohio App.3d 254, 511 N.E.2d 412; Chirico v. Chirico,
Montgomery App. No. 19722, 2003-Ohio-3238; Carr v. Carr (May 15, 2001), Washington App. No. 00CA26. The trial court need not, however, afford a parent's status as the primary caregiver any greater weight than other R.C. 3109.04(F)(1) factors. Instead, the primary caregiver factor is simply one factor for a judge to consider. See, e.g., Thompson; Carr.
 {¶ 20} In the case sub judice, the trial court considered the factors enumerated in R.C. 3109.04(F)(1) and determined that Taylor's best interests would be served by awarding custody to appellee. Nothing in R.C. 3109.04(F)(1) required the court to award custody to appellant simply because she had been Taylor's primary caregiver. Rather, R.C.3109.04(F)(1) provides the court with discretion to weigh the relevant factors and determine how those factors apply to the child's best interests.
 {¶ 21} Additionally, we disagree with appellant that the trial court abused its discretion by placing the child in appellee's custody when the evidence showed that the child spent the majority of her time in appellee's girlfriend's care. The trial court was well-aware of the amount of time that the child spent with appellee and with his girlfriend. The trial court obviously concluded that even though the child spent a large amount of time in appellee's girlfriend's care and not in the care of a natural parent, the child's best interests still would be served by awarding appellee custody. While we sympathize with appellant's situation, we simply cannot find that the trial court abused its discretion.
 {¶ 22} Moreover, we disagree with appellant that the trial court "placed undue emphasis on [her] level of education and employment status." If appellant does not attend school as required by law, then she may again be placed in the children's home and again have Taylor removed from her care. Additionally, if appellant does not achieve an adequate education, her ability to provide a stable and suitable home for her child may be impaired. Furthermore, without gainful employment, appellant's ability to provide for Taylor's daily needs will be hampered. All of the foregoing factors impact Taylor's best interests.
 {¶ 23} At this juncture we wish to emphasize that the trial court found that both parents are well-intentioned, caring and loving parents and wish the best for their child. We readily agree with this assessment and the record before us does indeed support this finding. Unfortunately, the trial court was faced with the task of selecting a parent to serve as Taylor's custodial parent. Custody issues present some of the most difficult and heartwrenching issues that courts are called upon to decide. Nevertheless, courts must fulfill their duties and decide those issues in the best manner it is humanely possible to do. Furthermore, we note that in the instant case it is possible that appellant may, in the future, seek to expand her visitation time with Taylor. If appellant improves her situation and if appellant continues to establish a good relationship with Taylor, the trial court may look favorably at increasing appellant's parenting time.
 {¶ 24} Accordingly, based upon the foregoing reasons, we overrule appellant's assignment of error and affirm the trial court's judgment.
Judgment Affirmed.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Gallia County Common Pleas Court, Juvenile Division, to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Harsha, J. Kline, J.: Concur in Judgment Opinion