DECISION AND JOURNAL ENTRY
{¶ 1} Appellant Krystle Murray has appealed from a decision of the Summit County Court of Common Pleas, Juvenile Division that found her in contempt of a prior order of the court and granted her mother's and her paternal grandmother's motions to intervene. This Court affirms in part, and reverses in part and the matter is remanded.
 I {¶ 2} On June 13, 2002, the Summit County Children Services Board ("CSB") filed a complaint against Appellant alleging that Appellant's minor child, C.M., was abused pursuant to R.C.2151.031, neglected pursuant to R.C. 2151.03(A), dependent pursuant to R.C. 2151.04, and endangered. The complaint alleged the following facts. On June 11, 2002, Appellant was arrested by the Stow Police Department for domestic violence against her paternal grandmother, Marie Murray ("Marie"). Appellant allegedly punched her grandmother in the face while the grandmother was holding Appellant's eleven-month-old child, C.M. After Appellant was arrested, C.M. was left in Marie's care. The complaint further alleged that:
"[Appellant] has not been in a stable home environment since December, 2001. She spends some time with [C.M.'s] alleged father, Timothy Cox. At other times, over the past month, she resided with Marie * * *. [Timothy] Cox was arrested for domestic violence on May 27, 2002 after an incident between he and [Appellant]. [C.M.] was present during the incident. [Appellant] claimed Mr. Cox was babysitting [C.M.] and was drunk."
 {¶ 3} The trial court granted CSB emergency temporary custody of Appellant's minor child. A hearing was held on June 14, 2002, and the trial court ordered CSB to retain emergency temporary custody of the minor child. The trial court further ordered the alleged father of C.M., Timothy Cox ("Timothy"), to establish paternity. The case proceeded to adjudication, and on July 30, 2002, the magistrate found by clear and convincing evidence that C.M. was a dependent and abused child. The trial court adopted the magistrate's decision. On August 14, 2002, Appellant's mother, Mrs. Diane Forcina ("Diane"), filed two motions: (1) a motion to intervene for the sole purpose of visitation and (2) a motion for visitation. Later, on September 6, 2002, the trial court placed C.M. in the temporary custody of CSB and denied Diane's August 14, 2002 motions.
 {¶ 4} On November 12, 2002, Appellant filed a motion for legal custody of C.M., wherein she argued that it was in the best interest of C.M. to be placed with her. Approximately ten days later, on November 22, 2002, Marie, who was the current placement for the minor child, filed a motion to intervene and change of disposition. In the motions, Marie requested the court permit her to intervene and become a party to the proceedings and she moved the court to change the disposition of the case from temporary custody to CSB to legal custody to her. The following year, on April 9, 2003, CSB filed a motion for a six-month extension of temporary custody and Appellant filed a motion in opposition. Diane filed a motion to intervene and a motion for change of disposition to legal custody to her on May 7, 2003. Marie filed a motion in opposition to Diane's motion. On June 6, 2003, the parties (including Diane and Marie) entered into an agreement, signed by all the parties, which became the order of the court. Pursuant to the agreement, the parties agreed that Appellant would have unsupervised visitation of the minor child on certain days and times. The parties also agreed that:
"6. There shall be a no contact order in effect by this Court between father, Timothy * * * and the minor child, [C.M.] [Appellant] is to enforce this Order. Should she fail to enforce any part of this Order, [Appellant] shall be subject to Contempt charges * * *[.]
"7. Should [Timothy] come to [Appellant's] home, she shall not permit him to visit with the minor child. Should he refuse to leave the premises while the child is visiting with [Appellant], [Appellant] shall immediately contact the local police department for assistance in having him removed from the property. [Timothy] presently has at least two warrants out for his arrest."
 {¶ 5} On July 8, 2003, CSB filed a motion to show cause, wherein CSB requested that the trial court compel Appellant to show cause why she should not be held in contempt for failing to comply with the June 6, 2003 order. In the motion, CSB alleged that (1) Appellant repeatedly failed to comply with the conditions and times of her unsupervised visitation with C.M; (2) Appellant allowed the alleged father of C.M., Timothy, frequent access to her home; (3) Appellant was uncooperative and evasive in permitting CSB assess to her home; and (4) Appellant failed to submit to the required number of urine tests as ordered by the court.
 {¶ 6} On August 13, 2003, the trial court ruled on all pending motions. The trial court found that Appellant was in direct violation of the June 6, 2003 order and explained that: "Crystal [sic] Murray had contact, at least two times, with [Timothy] which was prohibited by the Order, filed June 6, 2003." The trial court found Appellant in contempt of the June 6, 2003 order and ordered her to pay a fine of $250 and be incarcerated in the Summit County Jail for thirty days. The fine and sentence were suspended on the following condition: "Mother, Crystal [sic] Murray, shall have no contact with Timothy * * * except as might be necessary to establish paternity and support." The trial court also sustained CSB's motion for a six-month extension of temporary custody, Diane's motion to intervene and Marie's motion to intervene; that part of Diane's motion relating to legal custody was overruled.
 {¶ 7} Appellant has timely appealed the trial court's August 13, 2003 order, asserting two assignments of error.
 II Assignment of Error Number One
"The trial court's decision finding [appellant] in contempt is against the manifest weight of the evidence."
 {¶ 8} In Appellant's first assignment of error, she has argued that the trial court's decision finding her in contempt was against the manifest weight of the evidence. This Court agrees.
 {¶ 9} As an initial matter, this Court notes that "[c]ontempt of court is defined as disobedience of an order of a court. It is conduct which brings the administration of justice into disrespect, or which tends to embarrass, impede or obstruct a court in the performance of its functions." (Alterations sic.)Highland Square Mgmt, Inc v. Willis Linnen, Co., L.P.A., 9th Dist. Nos. 21234 and 21243, 2003-Ohio-2630, at ¶ 10, appeal not allowed (2003) 100 Ohio St.3d 1412, quoting Windham Bank v.Tomaszczyk (1971), 27 Ohio St.2d 55, paragraph one of the syllabus. Whether a contempt proceeding is criminal or civil depends on the character and purpose of the contempt sanction.Brown v. Executive 200, Inc. (1980), 64 Ohio St.2d 250, 253. Generally, criminal contempt proceedings are punitive in nature, and are characterized by an unconditional prison sentence or fines as punishment for a completed act of disobedience and to vindicate the authority of the law and the court. Brown,64 Ohio St.2d at 254; see, also, Denovchek v. Trumbull Cty. Bd. ofCommrs. (1988), 36 Ohio St.3d 14, 16. In civil contempt proceedings, on the other hand, prison sentences are usually conditional. Brown, 64 Ohio St.2d at 253. Furthermore, the contemnor must be given an opportunity to purge himself of contempt. Fry v. Fry (1989), 64 Ohio App.3d 519, 523. Thus, civil contempt terminates when the contemnor agrees to obey the court's order. Brown, 64 Ohio St.2d at 254.
 {¶ 10} Based on the foregoing, this Court finds that the contempt proceeding in the domestic relations court was civil, as opposed to criminal. The standard of proof required in a civil contempt proceeding is clear and convincing evidence. Brown,64 Ohio St.2d at 253. An appellate court reviews a civil contempt order on an abuse of discretion standard. Wise v. Wise (Apr. 14, 1999), 9th Dist. No. 19167, at 4, citing Caroll v. Detty
(1996), 113 Ohio App.3d 708, 711; see, also, Stychno v.Stychno, 11th Dist. No. 2002-T-0083, 2003-Ohio-3064, at ¶ 12. An abuse of discretion connotes more than a mere error in judgment; it signifies an attitude on part of the trial court that is unreasonable, arbitrary, or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Berk v. Matthews (1990),53 Ohio St.3d 161, 169.
 {¶ 11} In the present case, on June 6, 2003, the trial court ordered that "[t]here shall be a no contact order in effect * * * between Father, Timothy Cox and the minor child, [C.M.]" The trial court ordered Appellant to enforce the no contact order, or be held in contempt for failure to enforce the order. Pursuant to the plain language of the June 6, 2003 order, Appellant was not to allow Timothy to have any contact with her daughter, C.M. Contrary to CSB's assertion, the trial court never specifically ordered Appellant to have no contact with Timothy, only that Timothy was never to have contact with C.M.
 {¶ 12} The evidence presented at the hearing on the motion for contempt showed that Timothy never came into contact with C.M. after the June 6, 2003 order went into effect. The evidence further showed that CSB staff members also understood that the June 6, 2003 order did not prevent Appellant from seeing Timothy. At the hearing on the motion for contempt, the following discussion took place between defense counsel and Mrs. Deanna Clingerman, Appellant's social worker:
"[Defense Counsel:] Okay, so if [C.M.] is not in the home, is my client allowed to see Mr. Cox?
"[Mrs. Clingerman:] We are recommending — Children Services had recommended that [Appellant] not see Mr. Cox because of some statements that [she] had made regarding her inability to handle herself around Mr. Cox.
"[Defense Counsel:] But you would agree with me that she's allowed to see Mr. Cox?
"[Mrs. Clingerman:] If [Appellant] wants to keep [C.M.] out of her home, she can see Mr. Cox.
"[Defense counsel:] So long as [C.M.] isn't there, that's the agreement, and you have no information that Mr. Cox is in the home, you have no personal information that Mr. Cox has been in the home since June 6th when [C.M.] is there, correct?
"[Mrs. Clingerman:] I'm trying to think. I don't believe so."
 {¶ 13} Mrs. Clingerman also testified that she thought she saw Timothy at Appellant's home after the June 6, 2003 order was in effect. However, Mrs. Clingerman stated that she only saw the back of a man's head and was never able to actually see the man's face. She stated that she simply assumed it was Timothy. Mrs. Clingerman also testified that on the day that she thought she saw Timothy, C.M. was not present in Appellant's home. When asked on cross-examination if she ever saw Timothy with C.M. after June 6, 2003, Mrs. Clingerman replied: "June 6th. No."
 {¶ 14} Mrs. Emily Condos, Appellant's second cousin, and Marie, Appellant's paternal grandmother, also testified at the hearing. Mrs. Condos stated that she dropped Appellant off at Timothy's home on two separate occasions after June 6, 2003. Mrs. Condos did explain, however, that when Appellant was in contact with Timothy Cox the minor child was not present. Marie also testified that she found a photograph of C.M. and Appellant with Timothy. Marie believed the picture was taken after June 6, 2003 based on the fact that the photograph was on the same roll of film she had given Appellant after the birth of Appellant's second child in May of 2003.
 {¶ 15} Despite the testimony of Mrs. Clingerman, Mrs. Condos and Marie which indicated that Timothy had contact with Appellant after the June 6, 2003 order went into effect, Appellant testified that after the June 6, 2003 order Timothy had not been back to her home. Appellant also testified that she took pictures of C.M. and Timothy together, but she stated that the pictures were taken in May of 2003.
 {¶ 16} This Court finds that the evidence adduced at trial clearly and convincingly showed that Appellant had contact with Timothy after the June 6, 2003 order. However, we find that the evidence did not clearly and convincing show that Timothy also came into contact with C.M. The only evidence presented at the hearing that suggested C.M. and Timothy were in contact after June 6, 2003, was Marie's testimony concerning a photograph that was never admitted into evidence. Moreover, Marie could not say with any certainty that the picture was actually taken after June 6, 2003. As such, we find that CSB did not show by clear and convincing evidence that Appellant violated the June 6, 2003 order. Therefore the trial court abused its discretion when it held Appellant in contempt. Consequently, we find Appellant's first assignment of error is well taken.
 Assignment of Error Number Two
"The trial court erred in permitting Diane Forcina and Mari[e] Murray to intervene in this matter."
 {¶ 17} In Appellant's second assignment of error, she has argued that the trial court erred in granting Diane's and Marie's motions to intervene. This Court disagrees.
 {¶ 18} An appellate court's review of a decision regarding a motion to intervene is an abuse of discretion standard. In reGoff, 11th Dist. No. 2001-P-0144, 2003 Ohio App. LEXIS 5989, at ¶ 11, appeal not allowed (2003), 100 Ohio St.3d 1546, citingPeterman v. Pataskala (1997), 122 Ohio App.3d 758, 761; see, also, In re Fusik, 4th Dist. No. 02CA16, 2002-Ohio-4410, at ¶ 23. As discussed in Appellant's first assignment of error, an abuse of discretion connotes more than a mere error in judgment; it signifies an attitude on part of the trial court that is unreasonable, arbitrary, or unconscionable. Blakemore,5 Ohio St.3d at 219. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Berk, 53 Ohio St.3d at 169.
 {¶ 19} Juv.R. 2(Y) provides, in pertinent part:
"`Party' means a child who is the subject of a juvenile court proceeding, the child's spouse, if any, the child's parent or parents, or if the parent of a child is a child, the parent of that parent, in appropriate cases, the child's custodian, guardian, or guardian ad litem, the state, and any other person specifically designated by the court."
 {¶ 20} This Court finds that Marie and Diane are not "parties" according to Juv.R. 2(Y). However, in determining whether they were proper parties to the juvenile proceedings the trial court could also use Civ.R. 24. In re Baatz (Aug. 11, 1993), 9th Dist. Nos. 92CA005478, and 92CA005479, at 5; see, also, In re Goff, 2003 Ohio App. LEXIS 5989, at ¶ 14. That rule provides, in pertinent part:
"Upon timely application anyone shall be permitted to intervene in an action: * * * (2) when the applicant claims an interest relating to the property or transaction that is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." Civ.R. 24(A)
 {¶ 21} Appellant has argued that Diane and Marie have no right to intervene pursuant to the Ohio Supreme Court's holding in In re Schmidt (1980), 25 Ohio St.3d 331, 337., which held that grandparents have no legal right to custody or visitation of their grandchildren. After reviewing In re Schmidt, and other cases such as In re Whitaker (1988), 36 Ohio St.3d 213, 214, this Court agrees that grandparents generally have no constitutional right of association or legal rights of access to their grandchildren. Other appellate courts have held, however, that:
"[I]ntervention by grandparents in a permanent custody proceeding is appropriate where the grandparents have a legal right to or a legally protectable interest in the custody or visitation with their grandchild, where the grandparents have stood in loco parentis to their grandchild, or where the grandparents have exercised significant parental control over, or assumed parental duties for the benefit of, their grandchild. Where any of these circumstances are present, a denial of grandparents' motion to intervene would constitute an abuse of discretion." (Emphasis omitted.) In re Goff, 2003 Ohio App. LEXIS 5989, at ¶ 15.
 {¶ 22} The testimony presented at the hearing indicated that both Marie and Diane were grandparents that "exercised significant parental control over, or assumed parental duties for the benefit of, their grandchild." In re Goff, 2003 Ohio App. LEXIS 5989, at ¶ 15. When Marie's motion to intervene was filed, C.M. was placed in her home, where C.M.'s great-grandmother "assumed parental duties for the benefit of" C.M. In re Goff,
2003 Ohio App. LEXIS 5989, at ¶ 15. At the hearing, Mrs. Clingerman and Appellant stated that Diane helped handle many of the child's needs. In fact, they even accused Diane of being too overbearing and controlling when it came to the welfare and care of C.M. Because we find that Marie and Diane assumed some aspect of Appellant's parental duties, we conclude that the trial court did not err in granting their motions to intervene. Appellant's second assignment of error is not well taken.
 III {¶ 23} Appellant's first assignment of error is sustained and her second assignment of error is overruled. The judgment of the trial court is affirmed in part, reversed in part, and the matter is remanded for proceedings consistent with this opinion.
Judgment affirmed in part, reversed in part and cause remanded.
Baird and Batchelder, JJ., concur.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to both parties equally.
Exceptions.
Baird, J., Batchelder, J., concur.