DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Joseph Sivertson, appeals the decision of the Summit County Court of Common Pleas, Juvenile Division, awarding custody of his son, M.S., to his sister, Amy Ohrnberger, and her husband. We affirm.
 {¶ 2} Appellant and his wife are the parents of two minor children.[1]
The minor child at issue in this case is M.S., who is the younger of the two children. M.S. was born, addicted to methadone, on June 11, 2002, in Akron, Ohio. He was transferred to Children's Hospital Medical Center of Akron's Special Care Nursery to withdraw from methadone. He remained hospitalized until September 5, 2002. Appellant remained in New York the entire period of his son's hospitalization, and Jill Sivertson, M.S.'s mother, did not visit regularly.
 {¶ 3} On August 20, 2002, Summit County Children Services Board (SCCSB) filed a complaint alleging M.S. to be abused, neglected and dependent. Emergency temporary custody was granted on August 20, 2002. On August 26, 2002, it was ordered that M.S. remain in emergency temporary custody of SCCSB, and a no-contact order against Appellant was issued. Upon his release from the hospital, M.S. was placed into foster care. The no contact order against Appellant was vacated on October 3, 2002.
 {¶ 4} On October 31, 2002, M.S. was adjudicated dependent; the allegations of abuse and neglect were dismissed. The Magistrate further held that M.S. was to remain in emergency temporary custody of SCCS. On May 7, 2003, M.S. was moved to another foster home.
 {¶ 5} On September 10, 2003, SCCSB was granted a six-month extension of temporary custody in order to complete home studies. On December 12, 2003, Appellant's father, George Sivertson, (Grandfather) filed a motion to intervene and a motion for legal custody. On January 26, 2004, SCCSB filed a motion for permanent custody. On March 3, 2004 a magistrate denied Grandfathers' motion to intervene, but his motion for legal custody was to be considered along with the motion for permanent custody. On March 15, 2003, Amy and John Ohrnberger, paternal aunt and uncle, filed a pro se motion to intervene. SCCSB filed a motion withdrawing its motion for permanent custody and filed a motion for change of disposition from temporary custody to legal custody to relative, to wit, the Ohrnbergers, on April 15, 2004.
 {¶ 6} The court held a hearing on May 7, 2004. At that hearing, the court overruled the motion to intervene and accepted Mother's decision to relinquish her rights to legal custody of M.S. On May 18, 2004, the Court placed M.S. in the legal custody of the Ohrnbergers, effective June 18, 2004. Appellant appeals, raising three assignments of error for our review.
 ASSIGNMENT OF ERROR I
"Failure to award legal custody to paternal grandfather was contrary to the best interest of the child."
 {¶ 7} In his first assignment of error, Appellant maintains that the trial court erred in awarding custody of M.S. to the Ohrnbergers and that such award was against the best interest of M.S. We disagree.
 {¶ 8} M.S. was adjudicated a dependent child by the lower court on October 31, 2002. R.C. 2151.353(A)(3) provides that: "[i]f a child is adjudicated [a] * * * dependent child, the court may * * * [a]ward legal custody of the child to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child[.]" In this case, both parents acknowledge that they are not currently in a position to take legal custody of M.S. Mother, Jill Sivertson, relinquished all rights to legal custody. Appellant (father) indicated on the record that he has substance abuse issues that he is attempting to resolve, and, until they are resolved, he is not in a position to fully care for M.S.
 {¶ 9} Once a child is adjudicated dependent, the best interest of the child standard is used to determine the best dispositional option for the child. In re Cunningham (1979), 59 Ohio St.2d 100, at syllabus. Motions for legal custody are considered under a best interest of the child standard. In re D.R., 153 Ohio App.3d 156, 2003-Ohio-2852, at ¶ 17.
 {¶ 10} In this case, the lower court determined that it was in M.S.'s best interest to award custody to his aunt and uncle, the Ohrnbergers. The court found that, while M.S.'s older sister lived with Grandfather and both parents wanted the two siblings to grow up together in the same household, awarding custody to Grandfather would not have been in M.S.'s best interest. The decision of the lower court regarding who receives custody of the child is accorded great deference. In re Awkal (1994),95 Ohio App.3d 309, 316.
 {¶ 11} The decision to grant or deny a motion for legal custody is within the juvenile court's sound discretion. In re Jones (May 2, 2001), 9th Dist. No. 20306, at 11. As such, we will not reverse the decision of the juvenile court absent an abuse of discretion. In re K.A. A.A., 9th Dist. No. 02CA008162, 2003-Ohio-2635, at ¶ 8. An abuse of discretion is more than an error of judgment, but instead demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v. OhioState Med. Bd. (1993), 66 Ohio St.3d 619, 621. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Berk v. Matthews (1990), 53 Ohio St.3d 161,169. We do not find that the court abused its discretion in awarding custody of M.S. to the Ohrnbergers.
 {¶ 12} Appellant alleges that while the Ohrnbergers are "strongly committed to providing M.S. with a nurturing home, caring for his needs and loving him[,]" the court erred in holding that M.S.'s best interests would be served by granting them custody. R.C. 2151.414(D) provides that "[i]n determining the best interest of a child * * * the court shall consider all relevant factors[.]"
 {¶ 13} In this case, the juvenile court considered a variety of factors before awarding custody to the Ohrnbergers. It is not contested that both the grandparents and the Ohrnbergers love M.S., desire to have him live with them, are willing and able to provide a home for him, and are concerned for his welfare and general wellbeing. However, when viewing all the evidence before it, the juvenile court concluded that it was in M.S.'s best interest to live with the Ohrnbergers.
 {¶ 14} Home studies were completed in Nassau County, New York, as related to Grandfather, Grandmother and Appellant, and in Otsego County, New York on Grandmother. None of these parties were approved for placement of M.S. The study done on Appellant, Grandfather and Grandmother revealed that Grandmother had indicated that there were Children Protective Services (CPS) cases in 1980, 1987, and 1991. Additionally, the study revealed that Appellant was arrested on June 19, 2003, for stealing $800.00 from his parents. The CPS report alleged that Appellant had returned groceries that his parents bought and used the money for drugs. Additionally, the report indicated that the house was in a "deplorable condition."
 {¶ 15} The caseworker did find that M.S.'s sister, Alison, was doing well with Grandfather and Grandmother. He reported that the grandparents were concerned for M.S.'s welfare. They had stated to him that they would do anything for their grandchildren. However, Tevinder Kaur, the Nassau County Department of Social Services Caseworker, wrote in his report that "[t]his agency does not feel that the Sivertsons can be resources for [M.S.] at this time due to [Appellant's] recent arrests and his current incarceration and the fact that the family is currently under CPS investigation."
 {¶ 16} A case study was also conducted in Iredell County, North Carolina, as related to the Ohrnbergers. The case worker found that, like Grandfather, they were motivated to provide a home for M.S., their home seemed appropriate with adequate space to accommodate M.S., and they both expressed love and concern for M.S. The caseworker stated that "the Iredell County department of Social Services finds no reason to object to the trial placement of [M.S.] with the home of Mr. and Mrs. Ohrnberger."
 {¶ 17} Ms. McLaughlin, M.S.'s guardian ad litem, testified as to her belief of what would be in M.S.'s best interest. She stated that "[i]t is my recommendation that it would be in [M.S.'s] best interest to be placed in the legal custody of his paternal aunt and uncle, John and Amy Ohrnberger." Ms. McLaughlin outlined for the court the reasons she felt that the Ohrnbergers would be better custodians of M.S. One of her concerns was that M.S. has hyperactive airway disease, which is a precursor of asthma. M.S. has always lived in a smoke free environment. The Orhnbergers are not smokers, but Grandfather does smoke.
 {¶ 18} Ms. McLaughlin acknowledged that Grandfather is doing a good job with Alison. However, she saw the real difference between the two potential custodians as how they affect M.S.'s mental health. She stated that the Ohrnbergers seemed to have a comprehension of how traumatic it would be for M.S. to be removed from his foster parents. They developed a relationship with the foster family. She stated that they appeared to have a realistic understanding of what his developmental levels are and they are very patient with him. She believed that Grandfather did not understand how the transition would affect M.S., and he seemed to be resentful of the times he had to go to Ohio to visit with M.S., while the Ohrnbergers put a lot of time and energy into the visits and appeared to have enjoyed them. She believed that the Ohrnbergers were committed to keeping M.S. in touch with his sister and the rest of the family in N.Y. The Ohrnbergers have a baby boy, Johnny, who is close in age to M.S., so M.S. would have a playmate.
 {¶ 19} The court also heard testimony from Mary Ann Hayden, M.S.'s foster mother. She testified that she took M.S. to the visitation center a few times to visit with Appellant and Grandfather. She stated that "Grandfather would just sit at the side and not really acknowledge [M.S.] at all. He wouldn't talk to [M.S.] at all." She further stated that "on several occasions where [she] would come and pick up [M.S.], [Grandfather] would be in the van waiting. * * * [H]e didn't really have much of a connection with [M.S.]"
 {¶ 20} Ms. Hayden testified that the Ohrnbergers did not get upset when M.S. cried, while Grandfather became angry and terminated a visit because M.S. was crying hysterically. She stated that the Orhnbergers told her "that however long it takes for [M.S.] to get warmed up to them, then they would stay there and wait, and they would allow [her] to stay as well * * * so [M.S.] can transition to a good point where he could be left with them." She stated that M.S. warmed up quickly to the Ohrnbergers.
 {¶ 21} In addition to the above, the court heard testimony as to positive interactions between the Orhnbergers and M.S., between Grandfather and M.S., and Appellant and M.S. Grandfather is 66 years of age, is in good health, has adequate income to provide for M.S. and a desire to raise him with his sister.
 {¶ 22} As mentioned above, it is not contested that both Grandfather and the Ohrnbergers love M.S., would care for him and desire to have him live with them. The juvenile court acknowledged that both the Ohrnbergers and Grandfather present good and viable options for the placement of M.S., and it considered the wishes of M.S.'s parents, Appellant and Jill Sivertson, who both testified that they prefer their children to grow up together in Grandfather's house. However, upon weighing the evidence before it, the juvenile court concluded that M.S.'s best interests would be served by granting legal custody to the Ohrnbergers.
 {¶ 23} Upon review, this Court holds that the juvenile court's finding that it would be in M.S.'s best interest to award custody to the Ohrnbergers did not constitute an abuse of discretion. It is obvious that the Orhnbergers would be fit custodians for M.S. While Grandfather may also be a fit custodian, and it may benefit M.S. to grow up with his sister, we cannot say that the juvenile court's decision finding it to be in M.S.'s best interest to award custody of him to the Ohrnbergers was arbitrary, unreasonable or unconscionable.
 {¶ 24} Under R.C. 3109.04, the juvenile court had the authority to decide to whom the care and custody of M.S. should be given. The juvenile court found that the placement of M.S. with the Orhnbergers would serve his best interest by allowing him to grow up in a stable, loving home environment. In reaching this conclusion, the juvenile court did not abuse its discretion. Appellant's first assignment of error is overruled.
 ASSIGNMENT OF ERROR II
"The award of legal custody to paternal aunt was against the manifest weight of the evidence."
 {¶ 25} In his second assignment of error, Appellant maintains that the award of legal custody of M.S. to the Ohrnbergers was against the manifest weight of the evidence. We disagree.
 {¶ 26} When evaluating whether a judgment is against the manifest weight of the evidence in a juvenile court, the standard of review is the same as that in the criminal context. In re Ozmun (Apr. 14, 1999), 9th Dist. No. 18983, at 3.
"`The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" State v. Thompkins (1977), 78 Ohio St.3d 380, 387, quotingState v. Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 27} "Every reasonable presumption must be made in favor of the judgment and the findings of facts [of the juvenile court]." Karches v.Cincinnati (1988), 38 Ohio St.3d 12, 19, citing Seasons Coal Co. v.Cleveland (1984), 10 Ohio St.3d 77, 79-80. Furthermore, `"if the evidence is susceptible of more than one construction, we must give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the [juvenile] court's verdict and judgment.'" Inre T.W., 9th Dist. No. 21594, 2003-Ohio-7185, at ¶ 5, quoting Karches,38 Ohio St.3d at 19.
"Accordingly, before an appellate court will reverse a judgment as being against the manifest weight of the evidence, the court must determine whether the trier of fact, in resolving evidentiary conflicts and making credibility determinations, clearly lost its way and created a manifest miscarriage of justice." In re Heatherly, 9th Dist. NO. 20925, 2002-Ohio-3028, at ¶ 12.
 {¶ 28} If an award of custody is supported by a substantial amount of credible and competent evidence, then the award will not be reversed as being against the weight of the evidence by the appellate court. In reJohnson (Feb. 12, 1992), 1st Dist. No. C-910333; Wooten v. Casey, 4th Dist. No. 03CA15, 2004-Ohio-55, at ¶ 17. As explained above, it was essentially uncontroverted that the Ohrnbergers would have been suitable legal custodians in this case. There was competent, credible evidence in the record to support a finding for the Ohrnbergers. Thus, Appellant's second assignment of error is not well taken.
 ASSIGNMENT OF ERROR III
"The trial court erred and committed reversible [sic] error to Appellant's prejudice when it denied grandfather's motion to intervene and for custody of the child."
 {¶ 29} In his third and final assignment of error, Appellant claims that the trial court erred when it denied Grandfather's motion to intervene and when it denied his motion for custody of M.S. As we have already discussed above, the juvenile court did not abuse its discretion in granting custody to the Ohrnbergers and therefore, the custody decision will not be reversed or overruled. Therefore, we will limit the discussion in this assignment of error to the denial of grandfather's motion to intervene.
 {¶ 30} An appellate court reviews a decision regarding a motion to intervene under an abuse of discretion standard. In re C.M., 9th Dist. No. 21720, 2004-Ohio-1984, at ¶ 18, citing In re Goff, 11th Dist. No. 2001-P-0144, 2003-Ohio-6768, at ¶ 11. We do not find that the juvenile court abused its discretion in denying Grandfather's motion to intervene.
"`[I]ntervention by grandparents in a permanent custody proceeding is appropriate where the grandparents have a legal right to or a legally protectable interest in the custody or visitation with their grandchild, where the grandparents have stood in loco parentis to their grandchild, or where the grandparents have exercised significant parental control over, or assumed parental duties for the benefit of, their grandchild. Where any of these circumstances are present, a denial of grandparents' motion to intervene would constitute an abuse of discretion." (Emphasis omitted.) In re C. M., at ¶ 21, quoting In re Goff at ¶ 15.
 {¶ 31} In this case, Grandfather has not "exercised significant parental control over, or assumed parental duties for the benefit of, their grandchild." Id. When Grandfather filed his motion to intervene, M.S. was living with his foster parents. Grandfather's interaction with M.S. has consisted only of the visits in Ohio. Therefore, we do not find that the juvenile court abused its discretion in denying Grandfather's motion to intervene. Grandfather's motion for custody was considered, and he testified at the May 10, 2004 hearing. Grandmother and Appellant's sister, Elizabeth, also testified at the hearing. They both were in favor of Grandfather receiving custody of M.S. Therefore, Grandfather had opportunities to pursue his interests even though his motion to intervene was denied. We conclude that the juvenile court did not err in denying Grandfather's motion to intervene. Appellant's final assignment of error is not well taken.
 {¶ 32} We overrule Appellant's three assignments of error and uphold the decision of the Summit County Court of Common Pleas, Juvenile Division awarding custody of M.S. to the Ohrnbergers.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Carr, P.J., Boyle, J., concur.
[1] Mother, Jill Sivertson, moved to Summit County from Nassau County, New York on May 22, 2002. Appellant still lives in Nassau County. Jill Sivertson allegedly moved to escape an abusive relationship with Appellant. She told Children Services that she was a victim of domestic violence from Appellant, who was once again using drugs, and she had left to start a new life without him. Appellant and Jill Sivertson have not lived together since she moved to Summit County, though currently, they are not legally divorced. Appellant lives in New York with his parents (Grandmother and Grandfather) and Appellant's first daughter, Alison, M.S.'s older sister.