[Cite as *In re S.H.*, 2011-Ohio-5335.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

IN RE: S.H.

C.A. No.    10CA009945

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    07 JC 19945

DECISION AND JOURNAL ENTRY

Dated: October 17, 2011

WHITMORE, Judge.

{¶1}    Appellant, Brenda H. ("Mother"), appeals from a judgment of the Lorain County Court of Common Pleas, Juvenile Division, that placed her minor child in the legal custody of the child's paternal aunt and uncle.  This Court affirms.

I

{¶2}    Mother is the natural mother of S.H., born May 10, 1999.  Although S.H.'s father was involved in the earlier stages of this case, he is not a party to the appeal.

{¶3}    Lorain County Children Services ("LCCS") became involved with the family during June 2007 because S.H. had not been attending school.  LCCS also had concerns about the unclean living conditions of the home and the fact that both parents suffered from untreated mental health problems.  The parents initially agreed to work with LCCS on a voluntary safety plan, but LCCS later filed a dependency and neglect complaint due to domestic violence between

Mother and the father and the parents' inability to meet S.H.'s basic needs. S.H. was later adjudicated a neglected and dependent child and placed in the home of a relative.

{¶4} Over the next several months, the parents worked on the reunification goals of the case plan. S.H. was later diagnosed with epilepsy and attention deficit hyperactivity disorder ("ADHD") and began taking two prescription medications to control her epileptic seizures and the behavioral problems associated with ADHD. During August 2008, because the parents demonstrated an ability to meet S.H.'s medical and other needs, the trial court returned S.H. to her parents' custody, under an order of protective supervision to LCCS.

{¶5} Four months later, S.H. was again removed from Mother's home. Mother and S.H. were no longer living with S.H.'s father but were living with Mother's brother, who had been convicted of a sex offense against S.H.'s older half-sibling. LCCS also reported unclean living conditions in the home and that S.H. was having increasing problems with her epilepsy, her behavioral problems, and her academic performance. LCCS also believed that Mother was no longer attending counseling.

{¶6} S.H. was placed in the Florida home of a paternal aunt and uncle and has lived there ever since. Eventually, LCCS moved the trial court to place S.H. in the legal custody of the aunt and uncle. Mother later filed her own motion for legal custody of S.H. Following a hearing on the motions, the magistrate recommended that S.H. be placed in the legal custody of her aunt and uncle. Mother filed objections to the magistrate's decision, arguing that the evidence did not support the magistrate's decision and that the magistrate erred in relying on the report of the guardian ad litem. The trial court overruled the objections and ordered that S.H. be placed in the legal custody of her aunt and uncle. Mother appeals and raises one assignment of error.

II

<u>Assignment of Error</u>

"THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION, WHEN OVER THE OBJECTIONS OF MOTHER, IT ADOPTED THE JUDGMENT OF THE MAGISTRATE GRANTING LEGAL CUSTODY OF S.H. TO A PATERNAL AUNT AND UNCLE, WHERE SUCH JUDGMENT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

**{¶7}** In her sole assignment of error, Mother argues that the trial court erred in overruling her objections to the magistrate's decision and ordering that S.H. be placed in the legal custody of the aunt and uncle. Specifically, she argues that the trial court's decision was not supported by the evidence. We disagree.

**{¶8}** Initially, we note that Mother has raised two additional issues that this Court will not address on the merits: whether the trial court was required to explicitly find that LCCS made reasonable efforts to reunify S.H. with Mother, and whether Mother's compliance with the case plan overcame the implicit determination of her unsuitability that resulted from the dependency and neglect adjudication. She has failed to properly raise either argument on appeal by assigning them as error. App.R. 12(A)(1)(b). Moreover, Mother did not timely raise these issues at the hearing before the magistrate or through her objections to the magistrate's decision and she has not argued that the trial court committed plain error. See Juv.R. 40(D)(3)(b)(iv).

**{¶9}** Following an adjudication of neglect, dependency, or abuse, the juvenile court's determination of whether to place a child in the legal custody of a parent or a non-parent is based solely on the best interest of the child. See *In re D.R.*, 9th Dist. No. 21218, 2003-Ohio-2852, at ¶17; *In re C.R.*, 108 Ohio St.3d 369, 2006-Ohio-1191, paragraph two of the syllabus (holding that an adjudication of abuse, dependency, or neglect is an implicit determination of the parent's unsuitability). "Although there is no specific test or set of criteria set forth in the statutory

scheme, courts agree that the trial court must base its decision on the best interest of the child." *In re N.P.*, 9th Dist. No. 21707, 2004-Ohio-110, at ¶23, citing *In re Fulton*, 12th Dist. No. CA2002-09-236, 2003-Ohio-5984, at ¶11. The juvenile court's disposition of legal custody to a relative is a less drastic disposition than permanent custody to a children services agency because it does not terminate parental rights but instead "leaves intact 'residual parental rights, privileges, and responsibilities.'" *In re Shepherd* (Mar. 26, 2001), 4th Dist. No. 00CA12, at *7, quoting R.C. 2151.011(B)(19). The trial court's decision to grant or deny a motion for legal custody is within its sound discretion and will not be reversed absent an abuse of discretion. *In re M.S.*, 9th Dist. No. 22158, 2005-Ohio-10, at ¶11. An abuse of discretion implies that the trial court's attitude is "unreasonable, arbitrary, or unconscionable." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219.

{¶10} The trial court's decision to place S.H. in the legal custody of her aunt and uncle was fully supported by the evidence presented at the hearing. The magistrate heard testimony from the caseworker, the guardian ad litem, and the paternal aunt and uncle, each of whom testified about how well S.H. was doing in the home of her aunt and uncle. Mother does not question the credibility of the witnesses, nor does she point to any evidence to support her implicit argument that the trial court should have placed S.H. in her legal custody instead. In fact, Mother did not testify at the hearing, nor did she present any evidence to support her own motion for legal custody.

{¶11} The caseworker testified that she had observed S.H. at the aunt and uncle's home in Florida and had maintained regular telephone contact and written communication with the aunt and uncle, as well as S.H.'s counselor and other service providers. The caseworker explained how S.H. was thriving in their home. Because the aunt and uncle were semi-retired

and their own two children were grown, they had been able to devote significant attention to working one-on-one with S.H. and had ensured that she received the medical care, counseling, and educational services that she needed. It was apparent from the testimony of all witnesses that the aunt and uncle had the ability and desire to meet all of S.H.'s needs and that they would continue to do so an ongoing basis.

{¶12} During the thirteen months that S.H. had been living with her aunt and uncle, she had made considerable progress addressing her educational, medical, and behavioral problems. When S.H. was first placed in their home, she was failing every subject in school; her academic performance and fine motor skills were significantly delayed for her age; she had trouble concentrating, following the rules, and making friends at school; she had anxiety that was causing her to chew on her skin; she was not sleeping well; and her epilepsy was not under control. The aunt and uncle ensured that S.H. took her medication regularly and received regular medical attention. Through adjustment of S.H.'s two medications, counseling, and the aunt and uncle providing her with a more consistent and stable environment, S.H.'s problems were stabilized. She was no longer having epileptic seizures or chewing on her skin and she was sleeping and controlling her behavior better.

{¶13} The aunt and uncle enrolled S.H. in school, ensured that she attended regularly, and became actively involved in her schooling. They worked with S.H. on her homework each night and arranged for her to regularly work with a tutor and an occupational therapist. They also involved S.H. in several extracurricular activities, which improved her confidence and social skills. At the time of the hearing, all witnesses reported that S.H. had made significant improvements during the year that she had spent with her aunt and uncle. Her academic performance still was not up to grade level, but she was receiving passing grades and high marks

for the effort that she exerted. The caseworker and the guardian ad litem were confident that the aunt and uncle could provide a suitable permanent home for S.H.

{¶14} S.H. had been living outside Mother's home for more than a year and had been involved with LCCS for more than two years due to concerns about the safety of Mother's home and her ability to meet S.H.'s needs. Mother had yet to demonstrate to LCCS or the trial court that she could meet S.H.'s educational, emotional, and medical needs on an ongoing basis. Although S.H. expressed love for Mother and enjoyed visiting her, she reported to her counselor that she felt safer and more secure with the aunt and uncle. S.H. still had concerns about violence in Mother's home and Mother's ability to care for her. Mother had only recently started counseling to address her lengthy history of physical and sexual abuse and its impact on her ability to make safe and appropriate decisions for herself and her children. She still was married to S.H.'s father, with whom she has a history of domestic violence. The caseworker and guardian ad litem both expressed concerns about Mother's ability to provide S.H. with a stable and secure home. The guardian ad litem further emphasized that S.H. had been removed from Mother's home two different times. She expressed her concern that another failed attempt at reunification with Mother would be very hard on S.H.

{¶15} The aunt and uncle had been facilitating visits between Mother and S.H. and testified that they would continue to do so. They understood that S.H. loved Mother and that a continued relationship with Mother is in S.H.'s best interest. Given the evidence presented at the hearing, the trial court reasonably concluded that it was in the best interest of S.H. to be placed in the legal custody of her paternal aunt and uncle. Mother's assignment of error is overruled.

III

{¶16}  Mother's assignment of error is overruled.   The judgment of the Lorain County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution.  A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run.   App.R. 22(E).   The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

BETH WHITMORE
FOR THE COURT

BELFANCE, P. J.
DICKINSON, J.
CONCUR

APPEARANCES:

HOLLACE B. WEIZEL, Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and AMY L. PRICE, Assistant Prosecuting Attorney, for Appellee.