[Cite as *In re A.C.B.*, 2017-Ohio-4127.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| IN RE: | : | **O P I N I O N** |
| A.C.B. AND M.M.B. | : | |
| | : | **CASE NOS. 2016-P-0065** |
| | : | **2016-P-0067** |
| | : | |

Civil Appeals from the Portage County Court of Common Pleas, Juvenile Division, Case Nos. 2014 JCC 1008 and 2014 JCC 1009.

Judgment: Affirmed.

*Shubhra N. Agarwal,* 3732 Fishcreek Road, #288, Stow, OH 44224 (For Appellant, Petrina A. Bishop).

*Victor V. Vigluicci,* Portage County Prosecutor, and *Brandon J. Wheeler,* Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Appellee, Portage County Department of Job and Family Services).

*Robert E. Rosenberg* and *Michael D. Dailey,* Rosenberg & Associates, 533 East Main Street, Ravenna, OH 44266 (For Appellees, Pamela Wise and Charles Wise).

*Leonard J. Brieding, II,* Guardian ad Litem, 4825 Almond Way, Ravenna, OH 44266.

DIANE V. GRENDELL, J.

{¶1} Appellant, Petrina Bishop, appeals from the judgment of the Portage County Court of Common Pleas, Juvenile Division, granting legal custody of her children to their grandparents, appellees Pamela and Charles Wise. The issues to be determined in this case are whether a parent can move for children's services to receive an extension of temporary custody, whether a grandparent can intervene in a matter

where children's services is seeking custody to be awarded to that grandparent, and whether a parent who has complied with some aspects of the case plan but relapsed on drugs should be permitted to have custody of her children. For the following reasons, the judgment of the lower court is affirmed.

{¶2} Bishop is the biological mother of A.C.B., born on October 20, 2003, and M.M.B., born on March 8, 2008.

{¶3} On December 1, 2014, appellee, Portage County Department of Job and Family Services (PCDJFS), filed Complaints alleging that the two children were abused, neglected, and dependent. The Complaints asserted that Bishop was arrested for Aggravated Trafficking in Drugs and Endangering Children; a recent incident of domestic violence involving Bishop and M.M.B.'s father, David Davis, occurred in the children's presence; and concerns existed regarding Bishop's and Davis' drug use.

{¶4} A shelter care hearing was held and the children were placed in the predispositional custody of PCDJFS on December 2, 2014.

{¶5} On January 21, 2015, the children were adjudicated dependent due to "alleged drug use; lack of parenting skills; alleged violence in the home, and the failure to protect" the children. The abuse and neglect allegations were dismissed on PCDJFS' motion.

{¶6} Following a dispositional review hearing, on May 8, 2015, the children were ordered to remain in the temporary custody of PCDJFS and a case plan was adopted.

{¶7} PCDJFS filed a Motion for Six-Month Extension of Temporary Custody on September 22, 2015, which was granted on November 23, 2015.

**{¶8}** On March 9, 2016, PCDJFS filed Motions for Change of Custody and to Terminate Case, requesting that legal custody of the children be granted to their grandparents, the Wises, with whom they had been living since November 26, 2014.

**{¶9}** Pamela Wise filed Motions to Intervene and Motions for Temporary Custody and Permanent Custody on April 11, 2016.

**{¶10}** Bishop filed Motions for Six Month Extension and to Amend Case Plan on April 26, 2016, requesting that the children remain in the temporary custody of PCDJFS so she would have additional time to reunify with them.

**{¶11}** A hearing was held on May 19, 2016. Prior to hearing testimony, the trial court dismissed Bishop's request for a six-month extension, finding that PCDJFS was the only entity that could request such an extension. The court also granted Pamela Wise's Motion to Intervene. The following pertinent testimony was presented:

**{¶12}** Alexandria Bevere, a social worker for PCDJFS, testified regarding her work with Bishop and the children and attempts to reunify them. A semiannual review was conducted on April 20, 2016, during which time A.C.B.'s father was incarcerated, M.M.B.'s father was on probation, and Bishop was in NEOCAP, a community based corrections facility, since, in February 2016, a drug test taken in relation to her criminal charges of Child Endangerment and Possession of Drugs was positive.

**{¶13}** Bevere opined that Bishop "continues to make poor choices for herself and her children." She expressed concerns about Bishop's ability to maintain sobriety, noting a positive drug test in November 2014 and the relapse in February 2016, indicating that she had tested positive for marijuana and "molly," or ecstasy. Bishop had done well with correcting her drug issues in the first year of the case plan and did not

3

have a positive drug test, but in November 2015, she began missing her Town Hall appointments for drug and alcohol treatment, being discharged due to her lack of participation, as she attended nine of 23 sessions and eventually was unable to finish due to being placed in NEOCAP after her relapse.

{¶14} Bishop also lost her public housing due to being in NEOCAP. While she expressed that she wanted to go to Miller House when she is released, Bevere testified that they could not guarantee when she may receive housing. Regarding Bishop's employment prior to entering NEOCAP, Bevere testified that Bishop said she was cleaning houses but she was unable to confirm that. Bevere noted that Bishop had been participating in counseling with the children, visited the children, and had completed the requirement to do a parenting evaluation prior to her placement in NEOCAP.

{¶15} Bevere testified about the children's "huge progress" while living with the Wises, who provide a safe home. The Wises worked with A.C.B. on completing his homework and he has improved his grades. Both kids are participating in sports and other activities. Bevere stated that "the children have made significant improvement with their trauma due to the removal" and have received therapy to deal with their past exposure to "ongoing domestic violence." She saw no concerns with the Wises' ability to parent the children.

{¶16} Pamela Wise testified that she has a good relationship with the children, they participate in activities, they have an allowance and bank accounts, and she and her husband are bonded with them and provide stability. A.C.B. is performing better in

4

school and has increased self-esteem. Charles Wise also expressed his bond with the children and desire to be their legal custodian.

{¶17} Bishop testified that she completed a drug assessment and attended parenting classes as required by the case plan. Regarding the Town Hall classes, she testified that she did not attend some due to her incarceration, although she missed a few outside of that as well. She explained that she was not convicted for Child Endangering arising from the incident leading to the removal of the children. Since November of 2014, she had been convicted of Possession of Methamphetamine and a Theft charge and tested positive for ecstasy, which led to her entering NEOCAP. While there, she had been participating in various classes, including anger management, as well as undergoing drug and alcohol treatment, and she has not tested positive for drugs. She expected to be released on June 7 and planned to go to the Miller House, which would help her "get back on [her] feet" and provide housing. She would begin looking for a job when released, as well as attend Town Hall appointments and AA meetings. She testified that she has a good relationship with her children and misses them.

{¶18} The guardian ad litem opined that it was in the children's best interest to be placed in the custody of the Wises, who provide permanence and stability, which he believed led to the children "improv[ing] dramatically." He also noted that Bishop's inconsistency with counseling, relapse, and lack of housing impacted his determination.

{¶19} On May 20, 2016, a Magistrate's Decision was issued, dismissing Bishop's Motions for Six Month Extension and granting Wise's Motions to Intervene. The Decision noted Bishop's violent relationship, positive drug tests, charge for

5

Possession of Methamphetamine, Theft offense, missing appointments, termination of her intervention in lieu of conviction, and placement in NEOCAP as factors impacting the decision. The magistrate recognized she had completed some programs as requested under the case plan. The Decision also noted the children's success in school and participation in activities while living with their grandparents. The magistrate found it was in the best interest of the children to be placed in the legal custody of the Wises. The Decision was adopted by the trial court.

{¶20} Bishop filed Objections to the Magistrate's Decision on May 31, 2016, relating to the failure to grant the extension and decision to allow Wise to intervene.

{¶21} The court issued a Journal Entry on September 23, 2016, finding no merit in the objections and ordering that the children be placed in the legal custody of the Wises.

{¶22} Bishop timely appeals and raises the following assignments of error:

{¶23} "[1.] The trial court committed reversible error and plain error by dismissing Mother's motion for six-month extension of temporary custody.

{¶24} "[2.] The trial court committed reversible er[r]or and plain error in granting maternal grandparents' motion to intervene.

{¶25} "[3.] The trial court committed reversible error and plain error in placing the children in the legal custody of the maternal grandparents."

{¶26} In her first assignment of error, Bishop argues that the trial court erred by dismissing her motion requesting that PCDJFS be granted a six-month extension of temporary custody.

{¶27} Appellees argue that only PCDJFS was permitted to make such a motion.

6

{¶28} "[T]his court reviews a trial court's interpretation and application of a statute under a de novo standard of appellate review." *State v. Phillips,* 11th Dist. Trumbull No. 2008-T-0036, 2008-Ohio-6562, ¶ 11. "The principles of statutory construction require courts to first look at the specific language contained in the statute, and, if unambiguous, to then apply the clear meaning of the words used." *Roxane Laboratories, Inc. v. Tracy,* 75 Ohio St.3d 125, 127, 661 N.E.2d 1011 (1996).

{¶29} Pursuant to R.C. 2151.353(A)(2), after a child is adjudicated dependent, one dispositional option is for the child to be placed into the temporary custody of children services or another individual. A temporary custody order issued under that section terminates within a year of the date of the complaint or the date the child was first placed in shelter care, "except that, upon the filing of a motion pursuant to section 2151.415 of the Revised Code, the temporary custody order shall continue and not terminate until the court issues a dispositional order under that section." R.C. 2151.353(G).

{¶30} R.C. 2151.415(A) provides that a children services agency granted temporary custody pursuant to section 2151.353 of the Revised Code:

> not later than thirty days prior to the earlier of the date for the
> termination of the custody order * * * or the date set at the
> dispositional hearing for the hearing to be held pursuant to this
> section, shall file a motion with the court that issued the order of
> disposition requesting that any of the following orders of disposition
> of the child be issued by the court: * * * (6) In accordance with

7

division (D) of this section, an order for the extension of temporary custody.

**{¶31}** R.C. 2151.415(D)(1) sets forth a procedure for seeking an extension of temporary custody, stating that "[i]f an agency pursuant to division (A) of this section requests the court to grant an extension of temporary custody for a period of up to six months," the court shall hold a hearing to determine whether "the extension is in the best interest of the child, there has been significant progress on the case plan of the child, and there is reasonable cause to believe that the child will be reunified with one of the parents or otherwise permanently placed within the period of extension."

**{¶32}** Pursuant to (D)(2), prior to the end of the foregoing extension, the agency shall either move for a dispositional order under (A)(1)-(5) or for a second extension, where the court should hold a hearing to determine whether:

> the additional extension is in the best interest of the child, there has been substantial additional progress since the original extension of temporary custody in the case plan of the child, there has been substantial additional progress since the original extension of temporary custody toward reunifying the child with one of the parents or otherwise permanently placing the child, and there is reasonable cause to believe that the child will be reunified with one of the parents or otherwise placed in a permanent setting before the expiration of the additional extension period.

**{¶33}** R.C. 2151.415(F), allows for a party to move the court to hold a hearing "to determine whether any order issued pursuant to this section should be modified or

terminated or whether any other dispositional order set forth in divisions (A)(1) to (5) of this section should be issued."

{¶34} The foregoing statutes dictate the procedures to be followed by PCDJFS after it has been granted temporary custody, including the steps for extending such custody. They do not specify a procedure for another party to seek custody on PCDJFS' behalf. R.C. 2151.415(F) does permit a party to file a motion requesting the *issuance* of dispositional orders under (A)(1) to (5), but excludes (A)(6), which allows extensions of custody. While a party may seek *any* order under (A) to be "modified" or "terminated," it is questionable that Bishop's motion sought such relief. She requested that a second extension of temporary custody be issued. Such an extension is granted under the foregoing statute which sets forth a procedure only in relation to the agency requesting the extension. Further, a second extension is not a "modification" of the first extension, as it is issued under a separate code section, (D)(2) rather than (D)(1), and requires that different findings be made by the court. Under R.C. 2151.415, there is no indication that a parent may file a request for an extension of temporary custody to the agency.

{¶35} Juvenile Rule 14(B) sets forth the same procedure in relation to an extension of temporary custody, stating that, "[u]pon the filing of an agency's motion for the extension of temporary custody, the court shall schedule a hearing" and that, "[p]rior to the end of the extension period, the agency may request one additional extension of up to six months."

{¶36} Bishop argues that Juvenile Rule 34(G) provides support for her conclusion. Juv.R. 34(G) states that "any party * * * may at any time file a motion

9

requesting that the court modify or terminate any order of disposition." The same analysis as outlined above applies here as well; Bishop did not seek to modify or terminate an order but to obtain the issuance of a new order.

{¶37} Bishop also contends that, pursuant to R.C. 2151.33(B)(1)(a), after a complaint has been filed alleging a child to be dependent, but prior to final disposition, any party may move for an order "granting temporary custody of the child to a particular party." This is not the relief Bishop sought in her motion, as she requested a six-month extension. Moreover, it was unnecessary to issue an order granting temporary custody of the children to PCDJFS, since it already had such custody. Thus, R.C. 2151.33(B)(1)(a) does not apply in this matter.

{¶38} Bishop cites several Ninth District cases in which the court considered assignments of error raised by parents who have filed motions for extensions of temporary custody. *In re E.T.*, 9th Dist. Summit No. 22720, 2005-Ohio-6087, ¶ 9 (noting, in stating the standard of review, that "[t]he trial court had the discretion, consistent with the best interests of the children, to determine whether to grant [the parents'] motion for a six-month extension of temporary custody"); *In re T.W.*, 9th Dist. Summit No. 21594, 2003-Ohio-7185, ¶ 11. No argument was before the court in those cases, however, regarding whether such motions were permissible under R.C. 2151.415.

{¶39} Bishop argues that the foregoing conclusion violates her Equal Protection rights, since PCDJFS was permitted to file a motion for an extension of temporary custody and she was not, and contends that she was denied procedural due process by not being permitted to have her request for an extension heard.

10

**{¶40}** Challenges to the constitutionality of a law, including equal protection and due process, are generally reviewed de novo. *In re T.M.*, 11th Dist. Geauga No. 2016-G-0060, 2016-Ohio-8425, ¶ 6. To the extent that the constitutional challenges were not raised below, the Ohio Supreme Court has held that the failure to raise such issues at the trial court level constitutes waiver. *State v. Awan*, 22 Ohio St.3d 120, 489 N.E.2d 277 (1986), syllabus. However, the Ohio Supreme Court has explained that the waiver doctrine is discretionary and "this court reserves the right to consider constitutional challenges to the application of statutes in specific cases of plain error or where the rights and interests involved may warrant it." *In re M.D.*, 38 Ohio St.3d 149, 527 N.E.2d 286 (1988), syllabus; *State v. Schlee*, 11th Dist. Lake No. 98-L-187, 1999 WL 1313651, 10 (Dec. 17, 1999).

**{¶41}** The Fourteenth Amendment to the United States Constitution provides that "[n]o state shall * * * deny to any person within its jurisdiction the equal protection of the laws." The Equal Protection Clause "'simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike.'" (Citation omitted.) *In re A.G.*, 139 Ohio St.3d 572, 2014-Ohio-2597, 13 N.E.3d 1146, ¶ 59; *In re B.D.,* 2012-Ohio-4463, 979 N.E.2d 5, ¶ 26 (11th Dist.) (the Equal Protection Clause requires "that similarly situated individuals be treated in a similar manner"). "A law that operates identically on all people under like circumstances will not give rise to an equal protection violation." *In re B.L.*, 10th Dist. Franklin No. 04AP-1108, 2005-Ohio-1151, ¶ 16, citing *Conley v. Shearer*, 64 Ohio St.3d 284, 289, 595 N.E.2d 862 (1992).

**{¶42}** Presuming that the statutory language set forth above permits only children services agencies to file for an extension of permanent custody, it does not

11

treat similarly situated parties differently. PCDJFS and Bishop have different interests, are not "in all relevant respects alike," and are not similarly situated, as PCDJFS is seeking to accommodate the best interest of the children, regardless of whether that allows Bishop to regain custody. Pursuant to the statute, all parents, however, are treated equally.

**{¶43}** Bishop primarily focuses on her argument that she was denied procedural due process by not being permitted to be heard on her motion.

**{¶44}** In determining whether procedural due process has been satisfied, the following factors are generally considered:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*In re B.C.*, 141 Ohio St.3d 55, 2014-Ohio-4558, 21 N.E.3d 308, ¶ 18, citing *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

**{¶45}** Here, Bishop has not demonstrated that procedural due process was violated. As noted above, the statute at issue provides a right for PCDJFS to file a motion for an extension of custody and, regardless, Bishop was permitted to have a hearing on the issue of custody, at which evidence was presented that related to custody, but also included testimony regarding the timeframe during which Bishop might

have been able to meet the case plan objectives and be a suitable custodian. The lack of progress on the case plan was evident and Bishop had the opportunity to question the pertinent parties regarding this issue. A separate hearing would have provided the same information about the circumstances of the parties and, given Bishop's relapse and other factors, would not have demonstrated the substantial progress necessary to grant an extension, as addressed above. *In re P.D.*, 12th Dist. Preble Nos. CA2015-02-008 and CA2015-03-010, 2015-Ohio-2829, ¶ 57. She was not deprived of her interest to maintain her custody through the procedures that were followed. Further, Bishop had the ability to challenge the disposition sought by PCDJFS through a variety of means, including the other possible dispositions under R.C. 2151.415, such as seeking an order that the children be returned home.

{¶46} The first assignment of error is without merit.

{¶47} In her second assignment of error, Bishop argues that the trial court erred in granting Pamela Wise's motion to intervene.

{¶48} "The standard of review for a motion to intervene is abuse of discretion." *State ex rel. N.G. v. Cuyahoga Cty. Court of Common Pleas, Juvenile Div.*, 147 Ohio St.3d 432, 2016-Ohio-1519, 67 N.E.3d 728, ¶ 21; *In re Goff,* 11th Dist. Portage No. 2001-P-0144, 2003-Ohio-6768, ¶ 11.

{¶49} Bishop contends that Wise should not have been permitted to intervene, since she did not stand in loco parentis or exercise parental control over the children.

{¶50} In support of her argument, Bishop cites cases that found an abuse of discretion in the denial of a grandparent's motion to intervene when she had assumed parental duties for the grandchildren and which held a grandparent does not have to be

13

joined in the absence of a right to custody. *See In re C.M.*, 9th Dist. Summit No. 21720, 2004-Ohio-1984, ¶ 20-22, citing *Goff* at ¶ 15, and Civ.R. 24(A).

**{¶51}** Bishop's arguments and these cases generally focus on the grandparents' *right* to intervene, pursuant to Civ.R. 24(A), which allows intervention when a party has an "unconditional right to intervene" or would be impaired if the matter was resolved without the party's participation. As this court found in *Goff*, there was no right to intervene under Civ.R. 24(A) where the grandparents had not established: a legal right to custody or visitation, that they had exercised parental control over the child, or had acted in loco parentis. *Id.* at ¶ 15.

**{¶52}** Permissive intervention, on the other hand, allows intervention when "an applicant's claim or defense and the main action have a question of law or fact in common." Civ.R. 24(B). In such a matter, the court can exercise its discretion to "consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." *Id.*

**{¶53}** It is unnecessary to determine whether the court was *required* to allow Wise to intervene, as this is not at issue. The court did not find that intervention was necessary as of right, but permitted her to intervene, an exercise of the broad discretion afforded to a juvenile court in ruling on requests for intervention. *See In re Byerly*, 11th Dist. Portage Nos. 97-P-0096 and 97-P-0097, 1998 WL 684178, 4 (Sept. 30, 1998). Bishop fails to discuss why permissive intervention was not appropriate under Civ.R. 24(B). PCDJFS and Wise both sought the same result, which was to place the children in the custody of the Wises.

**{¶54}** Even if the court's decision to allow Wise to intervene had been made in error, Bishop fails to demonstrate prejudice. *See In re R.P.*, 9th Dist. Summit No. 26836, 2013-Ohio-5728, ¶ 26 ("[e]ven assuming the trial court erred in granting party status to the [maternal relatives], Father must also demonstrate that the error was prejudicial to his rights"). PCDJFS' motion for custody was the one ultimately granted by the trial court, although Wise had filed such a motion. In either case, both sought the outcome of the Wises receiving custody. PCDJFS presented sufficient evidence through its witnesses to establish its contention that the Wises should properly be granted legal custody, as will be discussed in the third assignment of error. Wise's presence as a party did not change the facts of the case as presented by PCDJFS. In the absence of a specific contention that this changed the result of the proceedings, such an argument is properly rejected.

**{¶55}** The second assignment of error is without merit.

**{¶56}** In her third assignment of error, Bishop argues that the trial court committed reversible and plain error by placing the children in the Wises' legal custody, emphasizing her compliance with the case plan and that she could have completed the remaining objectives had she been given an additional six months.

**{¶57}** Generally, "absent an abuse of discretion, an appellate court will not reverse a trial court's determination in a child custody matter." *In re E.B.*, 11th Dist. Lake No. 2013-L-077, 2014-Ohio-5764, ¶ 37. However, to the extent that Bishop takes issue with the magistrate's findings in relation to custody, and their adoption by the trial court, Bishop filed objections only in relation to the denial of her request for a six-month extension and the motion to intervene. "[A] party's failure to object to a magistrate's

15

decision operates as a waiver of the right to assign as error that aspect of the court's adoption of the magistrate's decision, except for a claim of plain error." *In re L.P.R.,* 11th Dist. Lake No. 2010-L-144, 2012-Ohio-1671, ¶ 16, citing Juv.R. 40(D)(3)(b)(iv). The plain error doctrine applies "only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Heerlein v. Farinacci,* 11th Dist. Geauga No. 2008-G-2818, 2008-Ohio-4979, ¶ 17, quoting *Goldfuss v. Davidson,* 79 Ohio St.3d 116, 679 N.E.2d 1099 (1997), syllabus; *In re J.F.,* 11th Dist. Trumbull No. 2011-T-0078, 2011-Ohio-6695, ¶ 34.

**{¶58}** In reaching its custody decision, the lower court noted that it considered the best interest factors contained in R.C. 3109.04(F)(1)(a)-(j). *See In re K.A.,* 9th Dist. Lorain Nos. 15CA010850 and 15CA010860, 2017-Ohio-1, ¶ 17 ("[f]ollowing an adjudication of neglect, dependency, or abuse, the juvenile court's determination of whether to place a child in the legal custody of a parent or a relative is based solely on the best interest of the child" and courts look to, inter alia, best interest factors in R.C. 3109.04(F)(1)).

**{¶59}** In the present matter, the children were removed from Bishop's home due to domestic violence concerns as well as her arrest for Possession of Methamphetamine. Testimony was presented that although she complied with some case plan objectives after the children were removed from her custody, she was convicted of Theft and relapsed, using ecstacy, which caused her to be placed in NEOCAP, where she was living at the time of the hearing. The relapse occurred less

16

than four months prior to the custody hearing. She missed drug counseling as well as other counseling on multiple occasions, due to incarceration and other factors. Due to her situation at the time of the hearing, she had no housing in place for the children, was not employed, and had no vehicle or driver's license.

{¶60} Further, the children were doing well while with their grandparents, with A.C.B. improving in school and both involved in extra-curricular activities. The children have a good relationship with them and Pamela Wise indicated a willingness to provide appropriate visitation with Bishop. The guardian ad litem recommended granting legal custody to the Wises, as he believed that the children had improved while in their care and benefitted from the stability in that environment. All of these factors weigh in support of the court's custody determination.

{¶61} Bishop argues that she had completed many of the case plan objectives, emphasizing that until her relapse, she had negative drug screens, proper housing, and visited with and attended counseling with her children. She noted her participation in courses while in NEOCAP to handle anger management, domestic violence, and drug and alcohol issues. While there is no question that Bishop had completed some of the case plan objectives, this was properly weighed against the objectives she had not completed and the concerns that arose when she relapsed only a few months before the legal custody proceedings, especially given one of the case plan objectives for her to stay sober nine months before reunification with the children. Based on all of the evidence presented, we cannot find that it was error, plain or otherwise, for the trial court to adopt the magistrate's determination that it was in the children's best interest to be placed in the Wises' custody.

{¶62} Bishop argues that, given the additional six months she requested, she could have created a suitable environment for the children. It is noteworthy that Bishop had over a year of working on the case plan prior to PCDJFS seeking that legal custody be granted to the Wises. During that time period, although Bishop did complete some case plan objectives, she relapsed and was unable to provide a stable home for the children. As the guardian ad litem stated, living with the Wises provides some sense of permanency and consistency for the children. Bevere affirmed that, based on recommendations of the counselors, PCDJFS did not believe it was possible for Bishop to become an appropriate custodian before the sunset date in November 2016. Although Bishop made some positive changes, this did not ultimately create an environment which was in the best interest of the children and the record indicated that an additional six months would not be sufficient to change the outcome of these proceedings. Further, as noted above, the evidence showed that the elements necessary for granting an extension under R.C. 2151.415(D)(1) could not be proven given the lack of progress on the case plan.

{¶63} The third assignment of error is without merit.

{¶64} For the foregoing reasons, the judgment of the Portage County Court of Common Pleas, Juvenile Division, granting legal custody of the children to the Wises, is affirmed. Costs to be taxed against appellant.


TIMOTHY P. CANNON, J.,

THOMAS R. WRIGHT, J.,

concur.

18