[Cite as *In re L.R.R.*, 2018-Ohio-1448.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| IN THE MATTER OF: | : | **O P I N I O N** |
| L.R.R., DEPENDENT CHILD | : | |
| | | **CASE NO. 2017-P-0045** |
| | : | |
| | : | |

Civil Appeal from the Portage County Court of Common Pleas, Juvenile Division, Case No. 2015 JCC 690.

Judgment: Affirmed.


*Victor V. Vigluicci*, Portage County Prosecutor, and *Brandon J. Wheeler*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Appellee, Portage County Department of Job and Family Services).

*Shubhra N. Agarwal*, 3732 Fishcreek Road, #288, Stow, OH 44224 (For Appellant, Kenneth E. Roosa, II).


DIANE V. GRENDELL, J.

{¶1} Appellant, Kenneth Roosa, appeals from the judgment of the Portage County Court of Common Pleas, Juvenile Division, granting legal custody of his son, L.R.R., to Stacey and Gregory Bond. The issue to be determined in this case is whether a trial court errs in ordering that custody be granted to one of two possible custodians when both are suitable but the child has been living with one for the past year and a half. For the following reasons, we affirm the judgment of the lower court.

{¶2} Roosa is the biological father of L.R.R., born on March 3, 2015. L.R.R.'s

biological mother is Jerica Hixon.

{¶3} On August 12, 2015, appellee, Portage County Department of Job and Family Services (PCDJFS), filed a Complaint alleging that L.R.R. was abused, neglected, and dependent. The Complaint asserted that L.R.R. was present during a domestic violence incident between Roosa and Hixon, who were engaged. It also alleged that police officers had found the three living together in violation of a temporary protection order.

{¶4} Following an adjudicatory hearing, the court issued a September 21, 2015 Journal Entry finding L.R.R. to be dependent, based on concerns with mental health and substance abuse, family dynamics, and "failure to protect." L.R.R. was placed into the interim pre-dispositional custody of Hixon with protective supervision granted to PCDJFS. Following a dispositional hearing, the court continued the custody with supervision and a case plan was adopted.

{¶5} PCDJFS filed a Notice of Emergency Removal on November 4, 2015. Pursuant to the Notice, the Portage County Sheriff's Office ordered the removal of L.R.R. on November 3, 2015, following a report of domestic violence between Roosa and Hixon, at which time they both smelled strongly of alcohol. Roosa admitted to driving while intoxicated with L.R.R. in the vehicle. On November 6, 2015, a Motion to Modify Dispositional Order and Case Plan was filed. On February 18, 2016, the trial court issued a Journal Entry granting temporary custody to PCDJFS.

{¶6} PCDJFS filed a Motion for Six-Month Extension of Temporary Custody on July 7, 2016. On the same date, it filed a Motion for Adoption of Permanency Plan, seeking that legal custody be granted to L.R.R.'s relatives, Stacey and Gregory Bond,

2

with whom he had been living since November 3, 2015.

{¶7}   Roosa filed a Motion for Change of Custody on July 25, 2016.  The court denied this request.

{¶8}   On December 27, 2016, PCDJFS filed Motions for Change of Custody and to Terminate Case, requesting that legal custody of L.R.R. be granted to the Bonds.

{¶9}   Patricia Pierson, L.R.R.'s paternal grandmother, filed a Motion to Intervene and Motion for Legal Custody on February 13, 2017.  The court granted the request to intervene and joined her as a party.

{¶10}  A hearing was held before the court on April 14 and May 15, 2017, at which the following pertinent testimony was presented:

{¶11}  Kaleigh Wallace was the caseworker for L.R.R. and his family.  After L.R.R. was removed from Hixon's custody on November 3, 2015, he was placed with Stacey and Gregory Bond.  Stacey is Hixon's cousin.  L.R.R. had been with them for about 17 months at the time of the first date of the hearing.  The Bonds have two biological children, aged one and two, who are bonded with L.R.R.  The Bonds allowed Hixon, Roosa, and Pierson to visit with the child and facilitated their relationships.  Wallace explained that the Bonds have a "beautiful home" and a large family support system.

{¶12}  Wallace noted that Pierson was not considered as a placement in November 2015 since the violation of the temporary protection order took place at her home.  Wallace also believed that Pierson had not initially taken PCDJFS' involvement "seriously."  Wallace indicated that Pierson passed background checks necessary to be approved as a custodian, has a stable income, loves L.R.R., is bonded with him, and

3

"does well during visitation," which occurred over weekends. Wallace did express concerns regarding Pierson's physical condition as well as past transportation issues.

{¶13} Wallace testified that Hixon had been unable to meet several of her goals under the case plan and Roosa had completed most goals, but she had concerns about his ability to maintain consistent employment and stable housing. Given her belief that L.R.R. could not be returned to their custody, Wallace recommended the Bonds be granted legal custody since L.R.R. is bonded with their family and is used to their home.

{¶14} Stacey Bond, a registered nurse, testified that L.R.R. has lived with her family since he was eight months old, she has bonded with him "very much" and he is "best friends" with her daughter. If granted custody, she would continue to facilitate visitation with the parents and Pierson. She expressed concern that Pierson said she would not allow visitation with the Bonds for a few months if she received custody, in order to "reestablish where [L.L.R.'s] home is." Gregory Bond, Stacey's husband, testified that L.R.R. is part of their family.

{¶15} Patricia Pierson, L.R.R.'s paternal grandmother, exercises visitation with L.R.R. on the weekends, has a bedroom for him in her house, is bonded with and loves him, and attends family team meetings. She testified that he has friends near her home and is able to visit with Roosa at her home. She wants L.R.R. to be able to spend time with other family members as well.

{¶16} Pierson testified that she has no health or other concerns that would prevent her from caring for L.R.R. If she was granted custody she would facilitate a relationship with the Bonds, with whom she has communicated well in the past. She expressed a desire to receive custody of L.R.R. when he was removed from Hixon in

4

2015 but was not permitted to do so because the protection order was violated at her house.

{¶17} Roosa testified that his mother would have no difficulties in caring for L.R.R. He believed L.R.R. should be with his family. He also noted that when it is time for L.R.R. to return to the Bonds following visitation, he wants to stay with Roosa and Pierson.

{¶18} In a Guardian Ad Litem Report filed on May 11, 2017, the GAL opined that it is in L.R.R.'s best interest to be placed in the legal custody of the Bonds, although he should continue his relationship and visitation with Roosa and Pierson.

{¶19} The court issued a Journal Entry on July 10, 2017, granting legal custody to the Bonds and providing visitation for the parents and Pierson. The court found that both the Bonds and Pierson had safe housing and a bond with the child. The court did not weigh against Pierson her presence in the home when the incident involving the violation of the protection order/"assault" occurred and found that she would be able to physically care for L.R.R. It determined that the R.C. 3109.04(F) best interest factors "are fairly equal between the parties," but noted that the GAL recommended L.R.R. be placed with the Bonds, that L.R.R. had bonded with their children, and had lived with them since November 2015.

{¶20} Roosa timely appeals and raises the following assignment of error:

{¶21} "The trial court's decision of placing the child in the legal custody of Mr. and Ms. Bond was against the manifest weight of the evidence."

{¶22} We initially note that there is a question regarding standing in the present matter. While Roosa was a party to the proceedings below, he does not raise errors

5

relating to his own custody of the child. Rather, his argument relates to the trial court's award of custody to the Bonds rather than to his mother, Pierson.

{¶23} Standing "relates to a party's right to make a legal claim or seek judicial enforcement of a legal duty or right." (Citations omitted.) *Albanese v. Batman*, 148 Ohio St.3d 85, 2016-Ohio-5814, 68 N.E.3d 800, ¶ 24. Standing exists when the "'party has a sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy.'" (Citation omitted.) *State ex rel. Ford v. Ruehlman*, 149 Ohio St.3d 34, 2016-Ohio-3529, 73 N.E.3d 396, ¶ 56. On appeal, an appellant is limited to challenging how the trial court's decision impacted his rights rather than the rights of relatives. *In re Qu.W.*, 11th Dist. Ashtabula No. 2015-A-0016, 2015-Ohio-2202, ¶ 41.

{¶24} The issue of standing in cases where custody of a child is given to a party other than the parents has generally been addressed in the context of permanent custody matters, where there is conflicting authority depending upon specific facts. *See In re L.W.*, 8th Dist. Cuyahoga No. 104881, 2017-Ohio-657, ¶ 23 (a parent has no standing to argue an abuse of discretion occurred in failing to give the grandmother custody, but has standing to challenge only whether the termination of parental rights was proper); *Q.W.* at ¶ 41-42; *but see In re C.M.*, 4th Dist. Athens Nos. 17CA16 and 17CA17, 2017-Ohio-9037, ¶ 68, fn. 3 ("appellant has standing to assert on appeal that the trial court erred in not granting legal custody to one of his relatives rather than permanent custody, since he was prejudiced to the extent that it affected his residual parental rights") (citation omitted).

{¶25} Here, Roosa contends that the Bonds, unlike his mother, may not facilitate visitation with him and have not made him feel welcome in their home, presumably in

6

support of a contention that the court's decision impacted his rights.  PCDJFS raises no concerns regarding Roosa's standing.   Regardless, even presuming Roosa has standing, his argument that the court erred lacks merit.

**{¶26}** "[A]bsent an abuse of discretion, an appellate court will not reverse a trial court's determination in a child custody matter."  (Citation omitted.)  *In re A.C.B.*, 11th Dist. Portage Nos. 2016-P-0065 and 2016-P-0067, 2017-Ohio-4127, ¶ 57.  "That being said, the trial court's determination must be supported by some competent, credible evidence."   *In re E.B.*, 11th Dist. Lake No. 2013-L-077, 2014-Ohio-5764, ¶ 37; *Tredenary v. Fritz*, 11th Dist. Lake No. 2017-L-045, 2017-Ohio-8632, ¶ 26 ("[a]n appellate court will not reverse a judgment as being contrary to the weight of the evidence as long as there is some competent, credible evidence supporting the judgment") (citation omitted).

**{¶27}** Pursuant to R.C. 2151.353(A)(3), if a child is adjudicated dependent, the court can "[a]ward legal custody of the child to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child or is identified as a proposed legal custodian in a complaint or motion filed prior to the dispositional hearing by any party to the proceedings."

**{¶28}** In determining custody under R.C. 2151.353, the juvenile court "'should consider the totality of the circumstances, including, to the extent they are applicable, the best interest factors set forth in R.C. 3109.04(F).'"  (Citation omitted.)  *In re Memic*, 11th Dist. Lake Nos. 2006-L-049, et al., 2006-Ohio-6346, ¶ 26.  "However, there is 'no statutory mandate that they be expressly considered and balanced together before fashioning an award of custody under R.C. 2151.353(A)(3).'"  *In re Mitchell*, 11th Dist.

Lake Nos. 2002-L-078 and 2002-L-079, 2003-Ohio-4102, ¶ 14, citing *In re Pryor*, 86 Ohio App.3d 327, 336, 620 N.E.2d 973 (4th Dist.1993).

{¶29} In his argument that the court erred in granting the Bonds custody, Roosa primarily restates the facts as presented at trial, emphasizing Pierson's suitability as a legal custodian. We initially note that there is no question that the Bonds, who were granted custody, are able to provide a safe and adequate home, that L.R.R. is bonded with them, and that L.R.R. is bonded with their children. They testified that they would have no problem facilitating visitation and had done so while L.R.R. has been in their care. The court indicated that it considered the necessary best interest factors under R.C. 3109.04(F) and there is nothing in the record to demonstrate that providing the Bonds with legal custody would not be in L.R.R.'s best interest.

{¶30} Roosa argues that Pierson would be better able to maintain the parent-child bond between Roosa and L.R.R. The Bonds clearly testified that they always allowed visitation, a fact which was not disputed, although the testimony indicated Roosa was not always present during the entire period of the visitation. Further, although Roosa argues that the Bonds have "failed to" foster a relationship with his extended family, it is unclear how they prevented such relationships from occurring. In fact, Pierson testified not that the Bonds interfered but that, since visitation was limited to weekends, she did not want to take away from L.R.R.'s time visiting with Roosa. There is no reason why extended relatives could not spend time with L.R.R. during the scheduled visitation periods and the failure to do so has been Roosa and Pierson's choice, not the Bonds'. If custody was given to Pierson, similar concerns could be raised by the Bonds, who are relatives on the maternal side of the family.

8

**{¶31}** Regarding Pierson, it is apparent that the court recognized she would also be a suitable custodian, and considered that she was bonded with L.R.R. and would be able to care for him. While Roosa questions the validity of certain testimony presented by PCDJFS, such as Pierson's physical inability to care for L.R.R., the court specifically noted that it had rejected such testimony and believed she could care for him. The court stated that the best interest factors between the Bonds and Pierson "are fairly equal." However, it was ultimately necessary for the court to make a determination between Pierson and the Bonds. In weighing the evidence, the court noted that the GAL recommended the Bonds be granted custody and referenced the GAL's statements that L.R.R. had bonded with the family and lived with them since November 2015. This was a valid ground to consider in selecting one of two capable potential legal custodians. *See In re L.R.S.*, 11th Dist. Portage Nos. 2016-P-0050 and 2016-P-0051, 2017-Ohio-2604, ¶ 26-27 (finding no abuse of discretion where the trial court "had to choose the most suitable couple out of three capable options" and cited to slight differentiating factors to reach its decision); *also Ferres v. Ferres*, 6th Dist. Ottawa No. 90-OT-040, 1991 WL 355136, *3 (Aug. 30, 1991) (finding no abuse of discretion when the trial court awarded custody to the mother although both parents were "equally suitable to have custody").

**{¶32}** Finally, Roosa cites no legal authority for his position that the failure of PCDJFS to provide Pierson with the opportunity to have L.R.R. placed with her during the pendency of the proceedings rather than the Bonds should impact the legal custody determination at this stage. While it may be unfortunate for Pierson, and Roosa as her son, that L.R.R. was placed with the Bonds in November 2015 rather than in Pierson's

9

home, we must emphasize that the relevant consideration here is the best interest of *the child*. Assuming both Pierson and the Bonds can provide equally adequate homes for L.R.R., it is certainly relevant to consider the fact that moving L.R.R. out of the home where he has been happily living for over a year and a half would be an important consideration in the best interest determination. R.C. 3109.04(F)(1)(d) (a best interest factor is "[t]he child's adjustment to the child's home, school, and community").

{¶33} We find no basis for a conclusion that the trial court abused its discretion or failed to properly weigh the evidence when it chose what it believed to be the better of two good options for L.R.R. on the issue of custody, which is supported by the record.

{¶34} The sole assignment of error is without merit.

{¶35} For the foregoing reasons, the judgment of the Portage County Court of Common Pleas, Juvenile Division, granting legal custody of L.R.R. to the Bonds, is affirmed. Cost to be taxed against appellant.


THOMAS R. WRIGHT, P.J.,

TIMOTHY P. CANNON, J.,

concur.