[Cite as *In re D.A.W.*, 2019-Ohio-2671.]

**IN THE COURT OF APPEALS**

**ELEVENTH APPELLATE DISTRICT**

**ASHTABULA COUNTY, OHIO**

| | | |
|---|---|---|
| IN THE MATTER OF: | : | **O P I N I O N** |
| D.A.W. AND A.W. | : | |
| | : | **CASE NOS. 2019-A-0015** <br> **2019-A-0016** |
| | : | |

Civil Appeals from the Ashtabula County Court of Common Pleas, Juvenile Division, Case Nos. 2017 JC 00076 and 2016 JC 00270.

Judgment: Affirmed.

*Nicholas A. Iarocci*, Ashtabula County Prosecutor, and *Shelley M. Pratt*, Assistant Prosecutor, Ashtabula County Courthouse, 25 West Jefferson Street, Jefferson, OH 44047, and *Margaret A. Draper*, Assistant Prosecutor, 3914 C Court, Ashtabula, OH 44004 (For Plaintiff-Appellee, Ashtabula County Children Services Board).

*David E. Koerner*, Law Office of David E. Koerner, 5900 SOM Center Road, Suite 12-146, Willoughby, OH 44048 (For Defendant-Appellant, David Wetherbee).

*Ariana E. Tarighati*, Law Offices of Ariana E. Tarighati, 34 South Chestnut Street, #100, Jefferson, OH 44047 (Guardian ad Litem).

MATT LYNCH, J.

{¶1} Appellant, David Wetherbee, appeals the judgment of the Ashtabula County Court of Common Pleas, Juvenile Division, granting appellee, Ashtabula County Children Services Board's, motion for permanent custody of the minor children, A.W. and D.W., and thereby terminating his parental rights. For the following reasons, we affirm the decision of the court below.

**{¶2}** On November 30, 2016, A.W. (dob 01/08/16) was placed into the temporary custody of Ashtabula Children Services upon its request for ex parte emergency temporary custody.

**{¶3}** On February 2, 2017, an adjudicatory hearing was held at which Wetherbee failed to appear. The juvenile court noted: "ACCSB became involved on November 30, 2016 when Mother [Ashley Lavin] appeared with the child in the Ashtabula County Court of Common Pleas before the honorable Judge Harris. Mother was sentenced to prison and no person was available to care for the child. David Wetherbee is alleged to be the Father, but there is no known compliance with paternity testing ordered on December 1, 2016." The court found A.W. to be a dependent child.

**{¶4}** On February 28, 2017, a disposition hearing was held at which Wetherbee failed to appear. The juvenile court made the following findings:

> The child is doing well in a placement with a paternal relative. Father resides with a paternal aunt. He has tested positive for methamphetamine by hair (30, 60, 90 days) and THC by urine on February 7, 2017. Father has reported part-time employment at Crow's Nest (unconfirmed).

> Mother remains incarcerated through March 4, 2017. Mother is pregnant with a due date of March 27, 2017. Upon her release from prison, Mother must address her mental health and substance issues and establish stability.

> Paternity testing was completed but the results of paternity testing [are] not known at this time.

The court ruled that "the child is continued in the Temporary Custody of Ashtabula County Children Services Board."

**{¶5}** On April 20, 2017, D.W. (dob 03/14/17) was placed into the temporary custody of Ashtabula Children Services upon its request for ex parte emergency

temporary custody.

{¶6} On June 20, 2017, an adjudicatory hearing was held at which Wetherbee failed to appear. The juvenile court found D.W. to be a dependent and abused child on the grounds that he "tested positive for opiates at birth"; "suffered from withdrawal symptoms, and was hospitalized at Rainbows, [sic] Babies and Children's Hospital"; and "both parents have been uncooperative with ACCSB."

{¶7} On November 21, 2017, an annual review hearing was held in A.W.'s case combined with a semi-annual review hearing in D.W.'s case at which Wetherbee failed to appear. The juvenile court made the following findings:

> Father established paternity of [A.W.] * * *.
>
> The children are doing well in a placement with a paternal relative, Kimberly Schick, in Pennsylvania.
>
> The parents previously admitted to use of heroin. Mother's May 2017 drug test was positive for morphine. Father's May 2017 drug test was positive for morphine, codeine, cocaine, methamphetamine, and THC.
>
> Father was in Meridian in Youngstown, Ohio for a 90 day residential treatment program but left after one week. He thereafter stayed with family in Cleveland. Father is in the Ashtabula County Jail for an unknown offense.
>
> Both parents are unemployed.
>
> Father is not in compliance with the case plan. Mother is making efforts to comply with the case plan at this time.

The court extended temporary custody of A.W. to Ashtabula Children Services through May 30, 2018 (first extension) and continued the temporary custody of D.W. as previously ordered through April 20, 2018.

{¶8} On April 12, 2018, Ashtabula Children Services filed a Motion to

3

Terminate Temporary Custody and Grant Legal Custody to a Third Party with respect to both A.W. and D.W.

{¶9} On May 21, 2018, a hearing on the Motion to Terminate Temporary Custody was held at which Wetherbee failed to appear. The juvenile court made the following findings:

> The children continue to be cared for by a paternal relative, Kimberly Schick, in Pennsylvania. ACCSB has filed a pending motion requesting that Ms. Schick be granted legal custody. Ms. Schick is not prepared to accept legal custody.
>
> Father is in the Ashtabula County Jail until September 14, 2018 for a probation violation and has pending felony charges.
>
> Mother was previously believed to be in Meridian in Youngstown for drug treatment. The status of her treatment and her whereabouts are unknown. She did complete a treatment program once but relapsed at some point. She did complete treatment, and intends to return to additional treatment in Youngstown, Ohio.

The court extended the temporary custody of A.W. to Ashtabula Children Services through November 30, 2018 (second extension) and of D.W. through October 20, 2018 (first extension).

{¶10} On June 13, 2018, Ashtabula Children Services filed a Motion Requesting Modification of Temporary Custody to Permanent Custody with respect to both A.W. and D.W.

{¶11} On November 5, 2018, the guardian ad litem filed her Report and Recommendation.

{¶12} On November 6, 2018, an evidentiary hearing was held on the motion for permanent custody at which Wetherbee was present (upon conveyance from the Ashtabula County Jail). Ashley Lavin was not present for the hearing and her current

4

whereabouts were unknown.

{¶13} Counsel for Wetherbee moved to continue the hearing for about four months so that his client could complete treatment at NEOCAP and make progress on his case plan. Wetherbee explained that he is participating in the Ashtabula drug court program as part of his plea deal. He had originally participated in treatment at Turning Point but was discharged unsuccessfully so "right now I'm on a sanction for NEOCAP" and "I got 18 months over my head if I mess up."

{¶14} The juvenile court denied the motion, noting that A.W. was approaching the two-year deadline for resolution of her case on November 30[1], and that, although D.W.'s deadline is not approaching, the siblings share the same placement: "There is really no good reason why justice would require a further extension when [given] the amount of time that has passed, we haven't accomplished the goals that were originally defined for these two children."

{¶15} At the hearing, caseworker Julie Hamilton testified on behalf of Ashtabula Children Services.

{¶16} On December 28, 2018, the juvenile court granted the motion for permanent custody. The court made the following relevant findings:

> Mother and Father lived together during this case for some period of time at one of Mother's residences even though there were concerns regarding the relationship between the parents. Home Safe, a domestic violence shelter, provided housing benefits to Mother at that time on condition she did not reside with Father. The status of the parents' relationship is unknown.

---

1. R.C. 2151.415(D)(4): "No court shall grant an agency more than two extensions of temporary custody pursuant to division (D) of this section and the court shall not order an existing temporary custody order to continue beyond two years after the date on which the complaint was filed or the child was first placed into shelter care, whichever date is earlier, regardless of whether any extensions have been previously ordered pursuant to division (D) of this section."

\* \* \*

Ms. Hamilton assisted Father in entering residential treatment at Meridian in 2017, and provided transportation for Father to the facility. Father completed the 7 day detox program, but left only a few days after entering residential treatment. Father attempted treatment again in Turning Point, entering the program in September 2018. Father was expected to enter NEOCAP residential treatment on a date after the Permanent Custody Hearing.

Father completed a mental health assessment at Meridian, but compliance with any recommendations is unknown.

Father did not obtain or maintain housing during the case. Ms. Hamilton recalled a visit to a home at 1103 W. 43rd Street in Ashtabula, Ohio in April 2018. The next month Ms. Hamilton attempted a visit at the same home but it was unsuccessful. Ms. Hamilton believes that Father was again incarcerated by that time. Father has been incarcerated multiple times throughout the case.

Father last visited the children in 2017. Father requested visitation with the children in September 2018. Although the agency began the process of establishing those visits, Father left Turning Point in October 2018 before the visits could occur. Father's lack of visitation can be attributed, in part, to his repeated incarceration.

Kimberly Schick is a maternal great aunt who has been caring [for] the children. Both parents expressed an agreement to Ms. Schick being granted legal custody of the minor children. Ms. Schick chose not to accept legal custody, however, because she would not receive financial assistance in caring for the children. Financial assistance for the benefit of the children is available if she adopts the children. Ms. Schick is the third placement for each child since their removal.

The child [A.W.], who turns 3 years old on January [8], 2019, has severe aggression and requires extensive in-home services four days per week. The child has been diagnosed with an attachment disorder, an eating disorder, and PTSD. The level of aggression is so severe that the child is not taken into public at this time. Other concerns were raised but an investigation was inconclusive as to whether or not the child was a victim of sexual abuse while in her initial relative placement following removal.

> The child [D.W.] is described as a happy and well-adjusted child. No special needs have been identified at this time.

{¶17} With respect to the required R.C. 2151.414(B) findings, the juvenile court found that A.W. "was in the Temporary Custody of the agency from January 29, 2017 through June 13, 2018, which calculates to a period in excess of 12 months," and that A.W. and D.W. "cannot be placed with any parent within a reasonable time and should not be placed with any parent." In support of this finding, the court noted: "despite reasonable case planning and diligent efforts by ACCSB to assist the parents in remedying the problems that caused the children to be removed from the home, * * * the parents have failed to demonstrate an ability to obtain or maintain housing or demonstrate sobriety"; "Mother and Father suffer from a chemical dependency so severe that they have been unable to provide an adequate permanent home for the children and are unlikely to be able to do so within the next 12 months"; "the abandonment of the children by Father and his demonstrated lack of commitment to the children by * * * failing to regularly support, visit or communicate with the children when able to do so"; and "Father has been incarcerated repeatedly, and that repeated incarceration prevented Father from parenting the children."

{¶18} With respect to the required R.C. 2151.414(D) best interest analysis, the juvenile court found:

> As reflected in the testimony of Ms. Hamilton and the recommendation of the Guardian ad litem, no legally secure placement is available for the children absent a granting of permanent custody.
>
> The caseworker testified no parent has provided names of any relative who is able or willing to assume custody herein. No relative or other interested person has filed, or has been identified, in a pending motion requesting legal custody of the children. The

7

agency's filing of a prior motion for legal custody to the current care giver was made in an attempt to avoid permanent custody. The parents' agreement to that motion for legal custody is not sufficient when the care giver is unwilling and financially unable to accept that outcome. There is an additional concern that the relative care giver may be overwhelmed by the responsibility of caring for the children long term, which is a concern noted in the Guardian ad litem report.

The Court finds that the children are developing a bond with the relative care giver, which is the third home for both children since their removal.

There was no evidence presented regarding any other significant relationship between the child [sic] and any other person. The Court finds that even if a bond between Father and the children exists, Father has not visited with the children since November 2017 to maintain that bond. Likewise, any bond that existed between the children and Mother has been impacted negatively by Mother's lack of contact with the children since May 2018.

The Court finds that the children have not expressed their wishes due to the children's tender years and lack of maturity. The Guardian ad litem, on behalf of the children, recommends that the children's best interest is served by the granting of Permanent Custody.

The evidence is clear and convincing that a legally secure permanent placement of the children cannot be achieved without a grant of permanent custody to ACCSB. Permanent custody permits the children the opportunity to have a secure and stable home that is not otherwise possible.

{¶19} On January 24, 2019, Wetherbee filed a Notice of Appeal. On appeal, he raises the following assignment of error: "The trial court erred in finding by clear and convincing evidence that father's parental rights should be permanently terminated."

{¶20} A "[juvenile] court may grant permanent custody of a child to a movant if the court determines * * *, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and * * * the child cannot be placed with either of the child's

8

parents within a reasonable time or should not be placed with child's parents * * * [or] [t]he child has been in the temporary custody of one or more public children services agencies * * * for twelve or more months of a consecutive twenty-two-month period." R.C. 2151.414(B)(1)(a) and (d).

{¶21} Clear and convincing evidence is "that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." (Citation omitted.) *In re K.H.*, 119 Ohio St.3d 538, 2008-Ohio-4825, 895 N.E.2d 809, ¶ 42.

{¶22} Wetherbee challenges "the trial court's refusal to extend the temporary custody of [D.W.] for 6 months so that father can complete the NEOCAP residential treatment program." Appellant's brief at 7. He asserts such an extension of temporary custody is authorized pursuant to R.C. 2151.415(D) and Juvenile Rule 14. Wetherbee did not, however, request an extension of temporary custody, but a continuance of the hearing on permanent custody. In fact, this court has held that a parent is not authorized by the statute or rule to seek an extension of temporary custody to a children services agency. *In re A.C.B.*, 11th Dist. Portage Nos. 2016-P-0065 and 2016-P-0067, 2017-Ohio-4127, ¶ 34 ("[u]nder R.C. 2151.415, there is no indication that a parent may file a request for an extension of temporary custody to the agency").

{¶23} Juvenile Rule 23 provides: "Continuances shall be granted only when imperative to secure fair treatment for the parties." In this case, the juvenile court justifiably denied the motion for continuance (a de facto extension of temporary custody)

9

given D.W.'s sibling placement with A.W. for whom further extensions were prohibited by law and Wetherbee's failure to make substantive progress on his case plan goals. *State v. Unger*, 67 Ohio St.2d 65, 423 N.E.2d 1078 (1981), syllabus ("[t]he grant or denial of a continuance is a matter that is entrusted to the broad, sound discretion of the trial judge").

{¶24} With respect to the issues of whether the children could be placed with either parent within a reasonable time and whether it was in the children's best interest to grant permanent custody, Wetherbee contends "the motion for permanent custody can simply be denied for failure of proof." Appellant's brief at 11. Wetherbee broadly argues that Ashtabula Children Services did not present sufficient evidence for the juvenile court to make the necessary findings. He characterizes Hamilton's testimony as "too unclear and vague," and notes that "she was unsure of dates" and "did not have any documents or records to support her testimony." We disagree.

{¶25} Wetherbee's failure to exercise more diligence in completing case plan goals, parenting his children, and maintaining contact with the caseworker is not ascribable to Children Services. The essentials of Hamilton's testimony are unequivocal and uncontested: Wetherbee failed to maintain stable housing and employment. She acknowledged that "throughout the case he's had a factory job" and "did very well at it," but he would "quit" and "go off the radar." She described a positive home visit in April 2018, but the following month he was not there. She arranged for visitation with the children that he requested while at Turning Point in September 2018, but the following month he had left the program. Wetherbee failed to complete inpatient treatment for substance abuse at both Meridian and Turning Point and admitted to using

10

drugs during his incarceration. Wetherbee has not had contact with either child since November 2017. He complains that the court's findings were based on the testimony of just "one witness," but that witness' testimony is corroborated by the guardian ad litem's report.

{¶26} As to the issue of whether Wetherbee is presently capable of parenting his children, Hamilton's testimony was sufficient for the juvenile court to make the following cogent assessment:

> With regard to Father, while he is in the process of participating in programs through the criminal justice system, Father has failed to demonstrate any ability to provide stability for himself much less his children. Father expresses a commitment to caring for his children in the future but there has been no demonstration by Father of an ability to parent. Father has no known ability to support himself or to obtain housing, and his good intentions to do so upon his release from incarceration and completion of NEOCAP are simply not enough and are too tenuous to rely upon with regard to his children. Father's incarceration at the time of the Permanent Custody hearings [sic] supports the finding that he has been unable to change his conduct in such a way that would permit him to begin and maintain his parental responsibilities.

{¶27} The sole assignment of error is without merit.

{¶28} For the foregoing reasons, the judgment of the Ashtabula juvenile court, granting Ashtabula Children Services' motion for permanent custody is affirmed. Costs to be taxed against appellant.


TIMOTHY P. CANNON, J.,

MARY JANE TRAPP, J.,

concur.